Boynton, J.
The construction given to the will of the-testator by the district court, we believe to be erroneous. Where' a will is executed, making a disposition of property of the testator, both real and personal, a presumption arises that he intended thereby to dispose of his whole estate, unless the contrary appears. And, although the will in the present instance was evidently drawn with little attention to accuracy of language, enough appears to satisfy us that no part of the propei’ty of the testator was left undisposed of. The clause giving to the wife ■“ all my personal property, household goods, and provisions, including moneys and credits of every description which may be thereon at the time of my decease, during her natural life,” standing alone, and its meaning ascertained without regard to other provisions of the will, would seem to lead to the conclusion contended for by counsel for the defendant ; although, in such case, giving to the word “credits” a locality or abiding place, would involve a somewhat singular use of language. But nothing is more clearly settled, or of more frequent application in the construction of a will, than the rule Requiring the intention of the testator to be gathered from all its parts, and not from isolated passages; and when this clause is considered in conjunction with the remaining provisions, such intention is readily ascertained. The words “ which may be thereon ” evidently relate to the personal estate previously mentioned, other than money or credits, which might, at the testator’s death, *361 be on tbe premises; for, in tbe very next line, he directs the sale of so much thereof, referring to the property “ which may be thereon,” as may be sufficient to pay his just debts, —a direction that will hardly be claimed to refer to moneys or credits.
But we find, further on, that he gave, to be paid out of the personal estate, at the death of the widow, legacies amounting to $3,005. It is by no means clear, that what remains after payment of the debts of the estate by the executrix, and the consumption by her of what she is entitled to consume or expend during life, will be sufficient to pay off and discharge the legacies thus created, unless the money on deposit, or the United States bonds, are available for the purpose; and if the legacies are not paid, that ■equality of participation in the testator’s estate, which the payment of the legacy to Mrs. Noble, and the one to Mrs. ■Suiter, was designed to effect among the three daughters, will be entirely defeated.
Again, what the testator says of the provision made for his granddaughter, Laura A. Kimball, and the one for her mother, Mrs. Stewart, in conjunction with what is said re•specting the gift to the son before his decease, would seem to show quite clearly, that he did not intend Laura to have •any other or further portion of his estate, than that provided by the will. He says, “ It is also considered by me, that the $500 devised to Laura A. Kimball, and $5 to Alice L. Stewart, and the tract of land conveyed to my son, Asa Kimball, deceased, and his heirs, make for them an equitable share of my estate.” It is a mistake to suppose that this language is the same in import as that used in respect to the legacies of Mrs. Noble and Mrs. Suiter. The testator declared that he considered their legacies to make for them an equitable share of his estate with Amy Gillen and her heirs. Here, manifestly, is an implied reference to a previous advancement to Mrs. Gillen, which, in the distribution of his •estate, she is required, to account for. This advancement .and the devise to her by the will, with the legacy and de *362 vise to each of her sisters, placed the three upon a footing of equality; and this is what the expression of the testator, in effect, declared, and in our judgment, is all that it meant. But when he declared that the legacy to the granddaughter, and the one to her mother, in connection with the tract of land conveyed to the son before his decease, made for them an equitable share of his estate, he evidently intended to convey the meaning that this language implies, for he divides what remains unconsumed at the widow’s death, of the “personal property or money” bequeathed to her and “ his heirs ” among his three daughters, excluding the granddaughter from any share or participation therein. 'Why deny her a share in this residue, and permit her to receive, as heir, one-fourth of the bank deposit, and of the United States bonds, which constituted much the larger part of his estate ? It is also to be observed, that the property to be divided among his three daughters at the widow’s-death, is what remains of the “ personal property or money hereby devised to my said wife, Julia, and heirs, left unconsumed.” No money or personal estate of any kind had been bequeathed to the “ heirs ” which they could avail themselves-of, or consume, during the life of the widow, as the legacies-to them were not payable until the widow’s death. The testator, therefore, must have intended by this language to direct to be divided among the three daughters, the remainder left unconsumed by the widow, after deducting the-$3,005 required to pay the legacies.
It is, however, claimed, that the last clause of the will by which the testator expressed the desire that his money remain “ on deposit,” at interest, during the life of the widow, is inconsistent -with an intention to give the principal sum to the widow for life; and, inasmuch as the fund to be equally divided among the three daughters, at her death, was what remained unconsumed of the bequest to her for life, after paying the legacies created by the will, that such fund so at interest, could not, within the intention of the-testator, have been included in the sum to be so divided.
That there is some apparent force in this claim can not *363 be denied. But the same thing may be urged, and with the same propriety, in respect to money not in bank, but loaned ont to individuals, notes for which were found at the testator’s residence at the time of his decease. The languageis: “It is my will that all my money, deposited or otherwise, is to be left on deposit, at interest, during the natural life-time of said wife, except the interest to be drawn and used by her as she may need.” The words “ or otherwise,” refer to money not in bank, and include money that may have been in the house of the testator when he died, as also that at interest elsewhere than in bank.
The argument, therefore, that because the widow was not authorized to use any portion of the principal of the money on deposit in bank, or of the United States bonds, the same was not disposed of by the will, would reach, and subject to the same consequences, all money that was on the premises, or loaned out to any and all persons at the death of the testator; a result which no one contends for and which is manifestly opposed to the clearly expressed purpose of the testator. All “ moneys and credits of every description,” having, by a previous provision, been given to the widow, during life or widowhood, wre think the latter clause was designed to make the use of the same of some value to her, by requiring the principal sum to remain at interest for her benefit.
Nor does it seem to us that the testator intended to restrict his wife to such sum to be drawn from the accumulating interest, as would merely meet her needs and necessities. He had previously given her, for life or widowhood, all his property of every kind. His subsequent direction, to keep the money at interest, “ the interest to be drawn and used by her as she may need,” could not have been intended as a restriction or limitation upon the bequest of the use of the money previously given.
That this direction is susceptible of this restricted construction is very true; but we think it better comports with the intention of the testator to be drawn from the whole context of the will, to regard the expression “ as she *364 may need,” as equivalent to “ as she may desire.” This involves the right to use and dispose of all the interest to accrue on money loaned during the life of the widow, without reference to her personal wants or necessities.
Whether the phrase “ moneys and credits of every description ” includes the money on deposit and the United States bonds, depends also on the intention of the testator. In Boys v. Morgan, 3 My. & Cr. 661, a clause in the following language came before the court for interpretation, viz.: “ I guess there will be found sufficient in my bankers’ hands to defray and discharge my debts, which I hereby desire E. M. to do, and keep the residue for her own use and pleasure.” This was held, under the circumstances, and upon the whole context of the will, to amount to a gift of the general residuary personal estate to E. M.
A testator directed the income arising from his “principal money ” to be paid to his wife, while unmarried, for the support of herself and the education of his children, and at her death or marriage to be divided among the children. The testator had but little money, strictly so called, but he had a large personal estate and some freehold property. It was held thatathe whole personal property passed, including leaseholds. The Vice-Chancellor, speaking of the testator’s intention, said: “In using the term ‘principal money,’ I think he intended to signify all his capital — that is, he meant a universal disposition of all his money’s worth.” Prichard v. Prichard, L. R. 11 Eq. Cas. 232.
In Manning v. Purcell, 7 DeGex. M. & G. 55, a bequest of “ all my moneys ” was held to include the balance standing to the credit of the testator at his banker’s, one upon an ordinary current account, the other secured by deposit notes bearing interest. See also, Dowson v. Gaskoin, 2 Keen, 14. A testator gave to his son "William and two others all the money left at his decease. Erom the condition of his property, this was held to include money due on promissory notes. Morton v. Perry’s ex’rs, 1 Met. 446.
In Fulkerson v. Chitty, 4 Jones’ Eq., 244, the word “ money,” or “ moneys,” used in a will, was held to include *365 bank stock and bonds, the context favoring such construction ; and In the matter of the estate of Miller, 48 Cal. 165, tbe word “ money,” as used in the will of the testator, was held to include both personal and real estate. See Smith v. Davis, 1 Grant, 158 ; Kendall v. Kendall, 4 Russ. Ch. 860.
Cases of a similar character might be multiplied to a great extent. They all rest on the familiar principle that such construction must be given to the terms of a will as will effectuate the intention of the testator, to whatever consequences such construction may lead.
Our conclusion is, that the widow took, and is entitled to all the personal estate, including the deposit in bank and the United States bonds, during her natural life.
But, as respects the money on deposit or at interest, and the United States bonds, she is not authorized to expend or reduce the principal, but is entitled to the interest accruing thereon absolutely; and -what remains at the death of the widow, of the entire personal estate, exclusive of said interest, constitutes the fund from which the legacies are to be paid, the residue to be equally divided among the three daughters.
The objection that the respective husbands of the testator’s three daughters were improperly united as parties to the action is not well taken. Reinheimer v. Carter, 31 Ohio St. 579.
The judgment of the district court is reversed, and judgment rendered in accordance with the conclusion above stated.