[No. 3,004.]

## In the Matter of the Estate of THOMAS MILLER, Deceased.

CONSTRUCTION OF "MONEY" IN A WILL.—The word "money," used in making a devise in a will, will be construed to include both personal and real property; if it appears from the context, and on the face of the instrument, that such was the intention of the testator.

APPEAL from the Probate Court of the City and County of San Francisco.

The will was admitted to probate on the 11th day of August, 1868. On the 26th day of October following, the executors returned to the Court, an inventory of the estate of the deceased, in which the real estate was appraised at nineteen thousand seven hundred and fifty dollars, and the personal property at eleven thousand four hundred and seventy-six dollars. On the 14th day of January, 1870, the executors had paid the debts, legacies, and expenses of administration, and had in their hands the sum of one thousand two hundred and twelve dollars and nine cents in money, and filed a petition for a distribution of the same. The deceased left, him surviving, as heirs at law, his mother, Ann Miller, his sisters of the whole blood, Mary Ann Luke, Sarah McMillan, Honor Farrell, Maria S. Miller and Lottie J. Waters, his brother of the whole blood, George Miller, and sisters of the half blood, Frances Holborn and Emma Bennett.

Ann Miller, the mother, had died on the 20th day of March, 1869, and George Miller was the administrator of her estate. Emma Bennett, the half sister of the deceased, filed a petition, in which she prayed that one ninth part of the real estate might be distributed to her, and one ninth part of the rents and profits thereof, subsequent to the death of the testator. The Court appointed an attorney to represent the absent heirs. After argument, the Court entered a decree distributing the residue of the estate in the hands of the executors to George Miller, administrator of the estate of Ann Miller. Emma Bennett appealed.

The other facts are stated in the opinion.

*M. C. Blake*, for the Appellant.

That part of the will, "I give, devise and bequeath, all the estate, real and personal, or mixed, of which I may die seized or possessed, or in any way entitled," is introductory, and nothing passes to any one by it. At the end of the next clause, numbered the "First," only the sum of one hundred dollars has been given, and notwithstanding all that precedes it, if there had been no further bequest, only one hundred dollars would have passed under the will. At the end of the first six of the numbered sub-divisions, only certain sums of money and a promissory note have been disposed of, and at the end of the seventh, only these sums, the note, and the balance of money. Everything that passes under the will, passes by virtue of the seven numbered sub-divisions. Strike out the disputed clause, and the will is not materially affected—the note, the sums of money, and the balance of money still pass. Strike out the numbered sub-divisions, and nothing passes. The clause in question, then, whatever may be its significance, is simply introductory; but, what is more to the point, it is the kind of clause which the Courts call introductory. In *Beall's Lessee* v. *Holmes*, 6 Har. and Johns. 205, Buchanan, Ch. J., says: "It appears that James Beall made his will, in which, immediately after an introductory clause in these words, ' as touching my worldly estate wherewith it has pleased God to bless me in this life, I give, devise and dis-

pose of in the following form and manner, viz,' he pro-
ceeds: '*Imprimis*, I give and bequeath,'" etc.   In the same
case, the same learned Judge says: "In *Doe* v. *Allen*, 8
Term R. 477, the introductory words of the will are, 'as to
what real and personal estate it has pleased Almighty God
to bless me with, I give and dispose of the same as follow-
eth.'"   (See other cases referred to in the same connec-
tion.)   In *Sheafe* v. *Cushing*, 17 N. H. 508, Parker, Ch. J.,
speaks of a clause nearly identical in words, and entirely
identical in sense, with the one before the Court, as the
introductory clause, and of the next clause, as the devising
clause.

*Jarboe*, and *Harrison & Robinson*, for Respondent.

' The disposing part of the will reads as though the tes-
tator had said, "I give, devise and bequeath all the estate,
real and personal, or mixed, of which I may die seized or
possessed, as follows: that after paying certain legacies, my
mother receive the balance of my money, for her benefit as
long as she lives, and for her heirs after."

This, although an inelegant expression, would be trans-
posed by the Court, under its power so to do in order to as-
certain the intention of the testator, (1 Redf. 431; 10 Paige,
152), so as to read, "I give, devise and bequeath the bal-
ance of my money, viz: all the estate, real and personal, or
mixed, of which I may die seized or possessed, after paying
certain legacies, to my mother, for her benefit as long as
she lives, and her heirs after."

The respondents contend that this is the correct render-
ing of the testator's intention, as expressed by the will, and
further, that if the will had been so drawn, the appellant
would not be entitled to any portion of the estate.

Redfield (2 Redf. 437, note) says: "The word 'money' is
often and popularly used as equivalent to 'property' and
accordingly has received a similar construction in some of
the cases upon wills."

It is true that the literal significance of "money" is
"stamped metal," yet Courts have always extended the
meaning of the word to other objects, when such appeared
to be the intention of the testator.

In *Boys* v. *Morgan* (3 Mylne and Craig, 661,) the will read, "I guess there will be found sufficient in my banker's hands to defray and discharge my debts, which I hereby desire Mrs. Eliza Morgan to do, and keep the residue for her own use and pleasure." It was held that by this clause "stock" was bequeathed to Mrs. Morgan.

"Experience shows that the word 'money' is often used in the sense of property," said Lord Langdale in *Dawson* v. *Gaskoin*, 2 Keen, 18, and held that by the phrase "whatever remained of money," all the personal estate passed to the legatee. (See also, *Legge* v. *Askill*, T. & R. 265, note; *Kendall* v. *Kendall*, 4 Russ. 360; *Chapman* v. *Reynolds*, 28 Beav. 221.)

By the Court, CROCKETT, J.:

This appeal is from an order of the Probate Court, making a final distribution of the estate of Thomas Miller, deceased, who left a last will and testament, which was duly probated, and of which the following is a copy:

"In the name of God, amen. I, Thomas Miller, of the City and County of San Francisco, State of California, being in good health of body and of sound and disposing mind and memory (praise be to God for the same), and being desirous of settling my worldly affairs while I have strength and capacity to do so, do make and publish this my last will and testament. That is to say:

"I give, devise, and bequeath, all the estate, real and personal, or mixed, of which I may die seized or possessed, or in any way entitled;

First. To the Powell St. M. E. Sunday-school, one hundred dollars;

"Second. One thousand for building a family vault under the superintendence of my executors;

"Third. One thousand dollars to be expended in educating Richard and Mary Ann Luke's sons, viz., Eddy, Richard, and Thomas, the said sum to be truly and faithfully applied to the purpose above stated, in the best manner that my executors can devise;

"Fourth.   One certain note which I hold against Cutler Eldridge Waters and E. T. Batters, for one thousand dollars, to Freddy, son of E. Dewey and Lottie J. Waters, his wife. Said Lottie J. Waters to receive the income from said note until said Freddy Waters becomes twenty years of age, or at the executors option;

"Fifth.   To Honor and Maria S. Miller each two thousand dollars.

" Sixth.   To each of my executors, five hundred dollars for their trouble, and that they be not required to give bond.

"Seventh and lastly.   That my mother receive the balance of my money for her benefit so long as she lives, and for her heirs after.

" All to be settled and divided as herein mentioned by Donald McMillan, George Miller, and Henry W. Bennett, whom I appoint my sole executors."

The controversy hinges upon the construction to be placed upon the word "money" in the seventh clause; and the question is whether that word, in the connection in which it is used, is to be interpreted as including the real estate of the testator.   It is conceded by the appellant that the word "money" in wills has been frequently construed by the Courts, both in England and America, to include the personal estate of the testator.   The following authorities would seem to place this point beyond all doubt: *Dawson* v. *Gaskoin*, 2 Keen, 14; *Boys* v. *Morgan*, 3 Mylne & Craig, 661; *Kendall* v. *Kendall*, 4 Russ. 360; *Chapman* v. *Reynolds*, 20 Beav. 221; *Levinson* v. *Lady Lennard*, 34 Beav. 490; *Morton* v. *Perry*, 1 Metc. 446; *Cowling* v. *Cowling*, 26 Beav. 452; *Langdale* v. *Whitfield*, 4 Kay & J. 436; 2 Redfield on Wills, 111, 2d ed.; 2 Williams on Executors, 1,025; 2 Redfield on Wills, 437, note; Jarman on Wills, chap. 24, and cases there cited.

The doctrine of the authorities is, that in order to construe a devise of "money" as including the personal estate, it must appear from the context and on the face of the will that such was the intention of the testator, and that he used the word "money" as the equivalent of "personal estate."

But the appellant, whilst conceding the rule in respect to personal estate, contends that a devise of "money" cannot be held to include the real estate. We are unable, however, to perceive why, under our probate system, and laws of descent and distribution, there should be any distinction, in this respect, between the real and personal estate; and have been referred to no authority, which, in terms, makes any such distinction. It may be that in England, where it is the policy of the government to perpetuate real estate in families, rather than to disseminate it in small parcels among the masses; and, possibly, in some of the American States, where the real estate passes immediately to the heir, and is not assets in the hands of the administrator for the payment of debts, a more stringent rule of interpretation might be favored, whereby a devise of "money" would be held not to include the real estate, under any circumstances. But in this State, both the real and personal estate are assets in the hands of the administrator for the payment of debts, with only this distinction between them, viz: that the personalty must be first exhausted before the realty can be so applied, and our policy, unlike that of England, is to disseminate real estate, rather than to perpetuate it in families. Hence, we should adopt the more liberal interpretation, whereby, in construing a devise of this character, the real and personal estate would be placed on the same footing. Nor can we see why, on principle, there should be any difference between them. A devise of "money" is held to include the personal estate only when it appears on the face of the will, construed in the light of the surrounding facts that such was the intention of the testator; and we can see no reason why the same rule ought not to be applied to the real estate.

Inasmuch as the appellant concedes that the devise in the seventh clause of the will is sufficient to include the personal estate, it is perhaps unnecessary, after what we have said, to inquire whether it also includes the realty; because the same process of reasoning by which it is shown to include the personalty, will, on our theory, establish that it includes the realty also. We will add, however, that in

our opinion, it sufficiently appears on the face of the will, that the testator intended to devise to his mother the residue of his entire estate, remaining after the payment of the specific legacies, enumerated in the first six clauses. The will was evidently drawn up by an illiterate person, and the intention of the testator is awkwardly expressed. But after stating, in the introductory portion, that it was his intention to devise "all the estate, real and personal or mixed, of which I may die seized or possessed, or in any way entitled," he proceeds, in the six following clauses, to make certain specific bequests; and then concludes by expressing the intention, "that my mother receive the balance of my money for her benefit as long as she lives, and for her heirs after." The word "money" was evidently used in its widest and popular sense, in which it is frequently employed as synonymous with "property" or "estate." The word "money" is often and popularly used as equivalent to "property," and accordingly has received a similar construction in some of the cases upon wills. (2 Redfield on Wills, 437.)

Judgment and order affirmed. Remittitur forthwith.