[L. A. No. 6832. In Bank.—December 20, 1921.]

In the Matter of the Estate of EVA VAN BUSKIRK CARRILLO, Deceased.

[1] ESTATES OF DECEASED PERSONS—WILLS — INTERPRETATION — INTESTACY NOT FAVORED.—An interpretation of a will leaving a portion of an estate in a state of intestacy is not favored by the law.

[2] ID.—DOUBTFUL WORDS AND PHRASES—INTENT—SURROUNDING CIRCUMSTANCES.—Doubtful words and phrases in a will should be so construed as to give effect, if reasonably possible, to the intent of the testatrix, and in ascertaining such intent, resort may be had to the circumstances under which the will was executed.

[3] ID.—BEQUESTS OF "CASH" LEFT AT DEMISE — CONSTRUCTION OF WILL—NOTE AND MORTGAGE.—Where a testatrix, after disposing of numerous articles of personal property to her various relatives and making a devise and several bequests of personal effects to her daughter and to her brother, separately bequeathed to each of them "one-third of cash that is left after my demise," and at the time of the execution of the will a portion of her estate consisted of money due her from the estate of her deceased husband, which expected increment was still in the form of money due and payable at the time of her demise, and thereafter her administrator received the promissory note and a mortgage of the executors of her deceased husband's estate for the unpaid balance of such indebtedness, such note and mortgage were properly construed as "cash" within the meaning of such bequests.

APPEAL from a decree of final distribution of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas K. Case for Appellant.

Charles L. Evans and W. W. Butler for Respondents.

RICHARDS, J., *pro tem.*—This appeal is from a decree of final distribution of the residue of the property belonging to this estate. The only question presented upon this appeal is as to the meaning to be given to the word "cash" as used by the testatrix in her holographic will. Eva Van Buskirk Carrillo was the widow of one J. J. Carrillo, who had died, leaving a will by the terms of which she was given a one-eighth interest for life in the residue of his estate, consisting at the time his will was made of certain lands subject to mortgage. She was also given a legacy of $5,000. During the course of probate of his estate she had applied for and received a family allowance, a considerable portion of which was not promptly paid, nor was her legacy delivered to her up to the time of the making of her holographic will. In the year 1918 Eva Van Buskirk Carrillo executed her holographic will wherein, with much detail, she proceeded to bequeath numerous articles of personal property, such as rings, brooches, bracelets, earrings, china, clothing, and other personal effects of which she was then possessed to her various relatives, giving to each specific articles by name. She also devised the only piece of real estate of which she was then the owner, her home, to her brother and her daughter, share and share alike. As to her said daughter, Maude M. Whitaker, the clause in her said will by which the latter was to receive certain specific articles of personalty, and was also to receive her above named interest in said real estate, contained the added words "1 third cash." The succeeding clause in said will by which her brother James L. Orr was also given considerable personal effects, together with a one-half interest in said real estate, contained the words "1 third of cash that is left after my demise." One other clause in said will may be noted as bearing on the question involved in this appeal. It reads as follows: "If I have the $7000 coming to me I give to Mr. Peyton H. Moore for the legal work $500.00 he is deserving of it, as I promised if he got my estate settled I would make him a present and please give this amount to him providing I have $7000.00 left." At the time of the execution of this will the only actual

money which Mrs. Carrillo had on hand was the sum of $95 in bank. There was then due her, however, the sum of $1,450 upon account of her widow's allowance from her husband's estate, together with her one-eighth interest in the residue thereof, as well as her said unpaid legacy. Between the date of her said will and the date of her death in October, 1919, she effected a compromise of her claims against her said husband's estate by which it was agreed that she should be paid the sum of $10,500 in full settlement. Of this sum she received the sum of $1,000 during her lifetime, of which sum $907.17 was on hand at the time of her death. After her death and while her estate was in course of probate her administrator with the will annexed received the additional sum of $2,500 in money and a promissory note and mortgage for the sum of $7,000 executed by the duly authorized executors of her husband's estate. Of the money thus received there were expended certain sums in the course of administration, so that there remained on hand in money the sum of $1,612.98 when the estate was ready for distribution. There was also on hand the aforesaid note and mortgage for the sum of $7,000. The petition for final distribution, which was filed by Maude M. Whitaker, the daughter of said decedent, set forth the foregoing two items as assets of the estate and prayed that they be distributed to her as the sole surviving heir of her mother. The court, however, disregarded this prayer and, treating these assets as "cash," distributed the same by its decree of distribution one-third each to the persons named in said will as entitled to "1 third of cash that is left after my demise." From said decree of distribution the said daughter and sole surviving heir of said decedent prosecutes this appeal.

It is the contention of the appellant that the word "cash" and the phrase "cash that is left after my demise" are to be construed as meaning the actual money on hand at the time of the death of the testatrix, to wit, the sum of $907.17, and that it is this sum only that should have been divided among the three persons mentioned in the said will as entitled to "cash that is left after my demise." The balance of the money on hand at the date of distribution and the said note and mortgage the appellant claims herself to be entitled to as the unassigned residue of said estate. It is to be noted at the outset that this claim on the part of the appellant, if

acceded to, would compel the conclusion that the testatrix did not intend to dispose of her whole estate by her said will, but did intend to leave that portion thereof which the appellant now claims in a state of intestacy. [1] Such an interpretation is not favored by the law. (*Estate of O'Gorman,* 161 Cal. 654, [120 Pac. 33]; *Estate of Heberle,* 153 Cal. 275, [95 Pac. 41]; *Estate of Blake,* 157 Cal. 448, [108 Pac. 287]; Civ. Code, sec. 1326.) It is also to be noted as an aid to our reasoning as to the proper interpretation to be given to these words in this will that the testatrix began to write her said holographic will with the following words: "I, Eva Van Buskirk Carillo being in sound mind and body do hereby give to the following persons named herein for love and affection *money* and articles." It is also to be noted that no money is disposed of by the terms of this will unless the word "cash" as used therein is to be interpreted as the synonym of "money." It is significant at this point to take note of the fact that the maker of this will had expressly in mind the sum of $7,000 which she was entitled to receive and which, according to her expression, was "coming to me" in cash from the estate of her deceased husband, and which she had an expectancy of receiving during her lifetime. Had this expectancy been realized then, according to the appellant's own interpretation of the meaning of this will, it would under its terms have been properly divided into the three equal shares among those entitled to "cash" bequests in said will. It must, therefore, have been so intended by the testatrix, if the appellant's own contention be taken to be sound. In this immediate connection also it is to be noted that this expected increment was still in the form of money due and payable at the time of her demise, and was only placed in the form of a note and mortgage by the act of her administrator after her death. It must, therefore, for the purpose of interpreting this will be treated as money in expectancy when the testatrix drew her will. Pursuing the foregoing chain of reasoning and treating the testatrix's use of the word "cash" as employed in her said will as intended to mean "money," we are led to the conclusion that the testatrix used the word "cash" in the broader meaning of "money," which has sometimes been given to it. The following cases show the sense in which the word "money" has been sometimes used in wills. In *Estate of Miller,* 48 Cal. 165, [22 Am. Rep.

422], the following words were used: ''It is conceded by the appellant that the word 'money' in wills has been frequently construed by the courts, both in England and America, to include the personal estate of the testator. The following authorities would seem to place this point beyond all doubt: *Dawson* v. *Gaskoin,* 2 Keen, 14; *Boys* v. *Morgan,* 3 Mylne & C. 661; *Kendall* v. *Kendall,* 4 Russ. 360; *Chapman* v. *Reynolds,* 20 Beav. 221; *Levinson* v. *Lady Lennard,* 34 Beav. 490; *Morton* v. *Perry,* 1 Met. 446; *Cowling* v. *Cowling,* 26 Beav. 452; *Langdale* v. *Whitfield,* 4 Kay & J. 436; 2 Redfield on Wills, 2d ed., 111; 2 Williams on Executors, 1025; 2 Redfield on Wills, 437, note; Jarman on Wills, c. 24, and cases there cited.''

In *Estate of Jacobs,* 140 Pa. St. 268, [23 Am. St. Rep. 230, 11 L. R. A. 767, 21 Atl. 218], the property of the testatrix, at the time her will was executed, consisted only of personal estate. She disposed of the residue of her estate as follows: ''The remainder and residue of my money I give and bequeath to the Hospital of the Protestant Church of Philadelphia.'' The supreme court of Pennsylvania, in construing this clause in her will, said: ''It appears very plain to us that this testatrix used the word 'money' in the popular sense as the equivalent of property and that she intended all of her estate to pass by the residuary clause. She knew of what her estate consisted when she made her will. She knew it would satisfy all pecuniary legacies and leave a small residue.'' In 27 Cyc., at page 120, the commentator in defining the word ''money'' as used in wills says: ''In its widest and popular sense it is frequently employed as synonymous with property, estate; including, when the contest so indicated, any kind of property, even land. Sometimes it includes the whole personal estate and often the proceeds of realty. The meaning of the word, when used in a will, depends upon the context, and may be affected by the conditions of the testator's property and the surrounding circumstances.''

[2] We are pointed by these authorities to the final test to be applied to the determination and meaning of doubtful words and phrases in the will of a decedent. Such words and phrases should be so construed as to give effect, if reasonably possible, to the intent of the testatrix. (*Estate of Heywood,* 148 Cal. 184, [82 Pac. 755]; *Estate of Reith,* 144 Cal.

314, [77 Pac. 942]; *Estate of Koch*, 8 Cal. App. 90, [96 Pac. 100].) In ascertaining this intent resort may be had to the circumstances under which the instrument was executed. (*Estate of Spreckels*, 162 Cal. 559, [123 Pac. 371].) One of the most significant circumstances attending the execution of a will is to be found in the knowledge which the testatrix has of what her estate consists. In the case at bar this knowledge on the part of the testatrix was most exact and detailed. She knew she had certain items of jewelry and of, household and personal effects, which she distinctly identifies and distributes to the recipients of her bequests by name. She knew she had certain real estate and to whom she wished to devise it. She knew she had the sum of $7,000 in the form of a money obligation presently payable and which she expected to receive before she died. She knew she had no other estate. By use of the words in her will "what is left after my demise" she clearly intended to refer to the residue of her estate and she, therefore, as clearly did not intend to leave any portion of her estate undisposed of. **[3]** These considerations lead to but one unavoidable conclusion, which is that by the use of the word "cash" in her will, with its context, the testatrix intended to refer to and distribute the money to be received by her from her deceased husband's estate. This construction the trial court adopted in its decree of distribution in this estate, and we are satisfied that it committed no error in so doing.

The judgment is affirmed.

Shaw, C. J., Wilbur, J., Waste, J., Lennon, J., Shurtleff, J., and Sloane, J., concurred.