[Sac. No. 3916. In Bank.—February 21, 1927.]

In the Matter of the Estate of R. GRACEY, Deceased. JAMES SHIELDS GRACEY, as Executor, etc., et al., Appellants, v. CITY OF MERCED (a Municipal Corporation), Respondent.

[1] ESTATES OF DECEASED PERSONS—HOLOGRAPHIC WILLS—CONFLICT OF LAWS—WITNESSES.—Although a holographic codicil to a will may be invalid under the law of the state where the testator was domiciled, by reason of the absence of witnesses to it, when offered for probate in this state its sufficiency is governed by the law here, which does not require witnesses to such document.

[2] ID.—PROBATE PROCEDURE—FOREIGN TESTATOR—PROPERTY IN THIS STATE.—Where a testator was domiciled out of the state and his estate is being probated in the place of his domicile, if his interest in the estate of another, consisting partly of real property being probated in this state, be determined, by the doctrine of equitable conversion, to be personal property, it should be delivered to his executor for distribution in accordance with the law of his domicile; but if it be determined that there is no equitable conversion, the property should be distributed under the laws of this state.

[3] ID.—EQUITABLE CONVERSION—INTENTION—SECTION 1338, CIVIL CODE. Whether an equitable conversion of real property into personal property is effected by the will of a deceased person depends upon the intent of the testator, as shown by the provisions of the will; and where there is no express direction, or intention so shown

1. Law governing execution and construction of wills, note, 2 Ann. Cas. 591.
3. See 6 Cal. Jur. 532; 6 R. C. L. 1069.

therefor, such conversion does not result, even though the executor is given a discretionary power to sell all or any of the real estate.

[4] ID.—CONSTRUCTION OF SECTION 1338, CIVIL CODE.—Section 1338 of the Civil Code, providing that when a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of the testator's death, is simply declaratory of the common law; and the doctrine rests on the principle that equity considers that as done which ought to have been done.

[5] ID.—CONSTRUCTION OF WILL—VESTING OF PROPERTY.—A provision of a will that "After the funeral expenses and bequests are paid, should there still remain any money or property of whatsoever nature I die possessed of, I give to" a named person, vests the title to real property of the estate in the person named at the moment of the death of the decedent.

[6] ID.—REAL ESTATE—SALE OF—CHARACTER OF PROCEEDS.—When it becomes necessary to sell a portion of the real property of a decedent to pay specific bequests, and the whole of such property is sold, the surplus beyond the amount required for the purposes mentioned retains its character as real estate for purposes of distribution.

[7] ID.—DOCTRINE OF EQUITABLE CONVERSION—PURPOSE.—The doctrine of equitable conversion is a device employed in equity to bring about equitable results, and it is invoked to accomplish the intention of the testator, and for the benefit of beneficiaries.

[8] ID.—CONSTRUCTION OF WILL.—A provision in a holographic codicil to the will of a deceased person that, "of all money or moneys derived from the sale of real estate to come to me from the estate of" a named decedent, "that is of all the net amount that may come to me from said estate, I bequeath" to certain named institutions, does not show an intent of the testator to accomplish an equitable conversion of the real property of the estate.

[9] ID.—USE OF WORD "BEQUEATH" INSTEAD OF "DEVISE."—The use of the word "bequeath" instead of "devise" in such codicil was sufficient to pass title to the real property where it appears that the codicil was holographic and that the testator was unacquainted with the technical meaning of the term "bequeath," and intended by its use that it should apply to the takers of real property as well as personal property.

[10] ID.—APPEAL ON JUDGMENT-ROLL ALONE—INTENDMENTS.—Where an appeal is on the judgment-roll alone and the evidence is not

4.   See 6 Cal. Jur. 530.

7.   See 6 Cal. Jur. 526; 6 R. C. L. 1066.

10.   See 2 Cal. Jur. 691.

before the appellate court, all intendments are in favor of the determinations of the trial court.

[11] ID.—CONSTRUCTION OF WILL.—A will should be so interpreted as to render it operative, if it be reasonably susceptible to such interpretation, to the end that the intention of the testator be given effect and that intestacy be avoided.

[12] ID.—BEQUEST TO CHARITIES—AMOUNT—VALUE OF ESTATE.—In fixing the amount of one-third of the estate of a decedent which may be distributed to charitable uses under section 1313 of the Civil Code, the aggregate estate, *wherever situated*, is to be taken into consideration; and where the evidence is not before the court on appeal, it will be assumed that the trial court in determining such question had sufficient competent evidence before it upon which to base its implied finding to the effect that the administration of the estate of the decedent in a foreign state had progressed to the point where no further costs of administration would accrue.

(1) 40 **Cyc.**, p. 1075, n. 58, p. 1130, n. 12. (2) 24 **C. J.**, p. 1128, n. 31. (3) 13 **C. J.**, p. 852, n. 3, p. 853, n. 4, p. 860, n. 82, 84, p. 867, n. 19. (4) 21 **C. J.**, p. 200, n. 6, p. 201, n. 34. (5) 40 **Cyc.**, p. 1651, n. 84. (6) 24 **C. J.**, p. 706, n. 16. (7) 13 **C. J.**, p. 853, n. 4, 5. (8) 13 **C. J.**, p. 863, n. 98, p. 865, n. 7. (9) 40 **Cyc.**, p. 1386, n. 85, p. 1398, n. 47, p. 1399, n. 48, 50, p. 1525, n. 8, p. 1530, n. 43. (10) 4 **C. J.**, p. 735, n. 25. (11) 40 **Cyc.**, p. 1407, n. 97, p. 1408, n. 99, p. 1409, n. 4. (12) 4 **C. J.**, p. 735, n. 27.

APPEAL from a decree of distribution of the Superior Court of Merced County. J. J. Trabucco, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Devlin & Devlin and M. S. Zarick for Appellants.

F. W. Henderson, City Attorney, for Respondent.

SHENK, J.—Robert Gracey died testate on the twenty-fifth day of September, 1913, in the state of Pennsylvania. At the time of his death he was and for many years prior thereto had been a resident of that state and left real and personal property therein. He also left property in California consisting of money in bank and other personal property

11. See 26 Cal. Jur. 883.
12. See 5 Cal. Jur. 14.

and an interest in the estate of Sarah Jane Thursby, then in course of probate in Merced County. Sarah Jane Thursby died testate in Merced County on the third day of February, 1913, leaving an estate in said county consisting of real and personal property. Her will, holographic in form, was admitted to probate in that county. After making provision for the payment of debts, expenses of last illness, and certain legacies, her will set forth the following residuary clause: "11th. After the funeral expenses and bequests are paid, should there still remain any money or property of whatsoever nature I die possessed of, I give to Robert Gracey of Pennsylvania." The will next contained the following provision: "12th. I appoint John Olcese of Merced, California, my executor, to carry out the provisions of this last will, and also give him power to sell all or any of my real estate or personal property without any order from court. . . . "

At the time of the death of Sarah Jane Thursby her estate consisted largely of real property, all situated in the state of California. During the course of the administration of her estate in Merced County it was determined that the personal estate, after payment of debts, funeral expenses, costs and expenses of administration, was insufficient to pay the bequests mentioned in her will and it was found necessary to sell a portion of the real estate in order to discharge said bequests. Instead of selling a portion of said real property for said purpose it was deemed for the best interests of the estate to sell the whole of said real property. After such sale a considerable sum of money, being the proceeds of the sale of said real property, remained for the benefit of the residuary legatee and devisee. The proper distribution to be made of this residuum forms the basis of this controversy.

On February 12, 1913, or nine days after the death of Sarah Jane Thursby, Robert Gracey, the said residuary legatee and devisee, while domiciled in the state of Pennsylvania, appended to his existing holographic will the following codicil, holographic in form: "Of all money or money[s] derived from sale of real estate to come to me from the estate of Sarah J. Thursby, decd. of Merced, California, that is of all the net amount that may come to me from said estate, I bequeath one-half thereof to the Public Library of Merced City, California, and the remaining one-half to be equally

divided and distributed to Westminster College, mentioned in sec. 6 above, and the Boards of Home and Foreign Missions of the United Presbyterian [Church of North America] mentioned in secs. 2 and 5 above.'' The effect to be given to this codicil is the principal subject for determination on this appeal. Upon the death of Robert Gracey his last will was admitted to probate in the state of Pennsylvania and subsequently said will and codicil were admitted to probate in Merced County. James Shields Gracey was named executor in both jurisdictions. On proceedings to settle the final account and for distribution of the Gracey estate in Merced County the executor petitioned the court to turn over the entire California estate to the executor acting under the Pennsylvania administration. The City of Merced filed objections to said final account and also a cross-petition, in which it prayed that one-half of the amount of the estate in the hands of the California executor be paid to the City of Merced for and on behalf of its public library pursuant to the provisions of said codicil. After a hearing the court made an order in which the final account was settled and approved. The court found that the moneys on hand in the possession of the California executor were derived from the sale of the real estate in California devised to Robert Gracey, deceased, by the terms of the residuary clause contained in the will of Sarah Jane Thursby, deceased, and that the said moneys must be distributed as real estate in California according to the laws of California and not as personal property under the laws of Pennsylvania, the domicile of Robert Gracey, deceased. It was further found that the total net value of the estate of Robert Gracey, deceased, in California and elsewhere amounts to the sum of $65,509.59, and that under and pursuant to section 1313 of the Civil Code the sum of $21,836.53 is the total aggregate sum that can be bequeathed or devised to the said City of Merced, Westminster College, and the Boards of Home and Foreign Missions of the United Presbyterian Church. The court further found that the remainder of said property, to wit, the sum of $16,714.66 and certain other personal property not reduced to cash should be distributed to the executor under the Pennsylvania administration. The decree of final distribution was duly made and entered pursuant to the foregoing findings and determinations. From this decree the

executor under the Pennsylvania administration and the heirs of Robert Gracey, deceased, or their representatives, prosecute this appeal from that portion of the decree which orders distributed to the City of Merced in trust for the use and benefit of the public library of said city the sum of $10,918.27, to Westminster College the sum of $5,459.13 and to the Boards of Home and Foreign Missions of the United Presbyterian Church the sum of $5,459.13. The appeal is presented on the judgment-roll alone.

Two notices of appeal were filed, one on behalf of the executor under the Pennsylvania administration and the other on behalf of the heirs at law of Robert Gracey, deceased. By stipulation one record is presented and both appeals may be determined by one order. Rights of creditors are not here involved and all taxes and expenses of administration have been paid or provided for.

It is the contention of appellants that the court erred in holding that the assets which were on hand under the California administration were in legal effect real estate in the state of California at the time of the death of Robert Gracey, deceased, and in holding that the law of California was applicable to the distribution of the estate. It is their claim that the proceeds distributable under the California administration constituted personal property at the time of the death of Robert Gracey, deceased, by reason of an alleged equitable conversion of realty into personalty in both the wills of Sarah Jane Thursby and Robert Gracey and that the law of Pennsylvania should be applied to the distribution thereof. [1] The appellants alleged and proved the law of Pennsylvania to the effect that any holographic will or codicil devising or bequeathing property to charitable or public uses must be attested by at least two witnesses. The codicil here in question was not so attested and it is not questioned that tested by the law of Pennsylvania the said codicil would be invalid. But when the same was offered for probate in California its sufficiency as a valid codicil was governed by the law of this state (Civ. Code, sec. 1376). When so tested it was sufficiently proved, for in this state witnesses to a holographic will or codicil are unnecessary.

[2] The primary question for determination is whether an equitable conversion of the real estate in Merced County

to personal property took place upon the death of either Sarah Jane Thursby or of Robert Gracey. It is conceded by the respondents that if it be held, contrary to the determination of the trial court, that the California estate of which Robert Gracey died seised was, in contemplation of law, personal property at the time of his death it would follow that all of said California estate should be delivered to the Pennsylvania executor to be distributed in accordance with the laws of Pennsylvania, with the inevitable declaration there that the said codicil is void. On the other hand, if it be determined that there was no such equitable conversion in either estate it would seem to follow that distribution should be made as ordered by the trial court. [3] It is the claim of the appellants that the will of Sarah Jane Thursby created an equitable conversion of all of her real property into personalty as of the date of her death pursuant to the provisions of section 1338 of the Civil Code, which provides that "When a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of the testator's death." It is conceded by the appellants that there is no express direction to the executor of the Thursby will to convert the real property into money, but it is insisted that from the whole scheme of the will it was the intention of the testatrix that the executor should do so. We do not so conclude. As necessarily conceded there was no such express direction, and we find nothing on the face of the will that imports an intention on the part of the testatrix that such conversion took place. It does not appear therefrom that such conversion was necessary in order that the intentions of the testatrix be carried out. [4] Section 1338 of the Civil Code is simply declaratory of the common law (*Estep* v. *Armstrong*, 91 Cal. 659 [27 Pac. 1091]) and the doctrine rests on the principle that equity considers that as done which ought to have been done. In *Estate of Pforr*, 144 Cal. 121 [77 Pac. 827], it was said at page 128: "Whether such conversion is effected depends upon the intention of the testator as gathered from the entire provision of his will. If it is apparent from its terms that it was his will that the estate be sold and the proceeds given to his beneficiaries, an equitable conversion results, even if the direction for the

sale is not imperative. (*Dodge* v. *Pond*, 23 N. Y. 69.) 'The question of conversion is a question of intention, and the real question is, Did the testator intend his land should be converted into money at all events before distribution?' (*Wurtz* v. *Page*, 19 N. J. Eq. 375.) Mr. Pomeroy (Equity Jurisprudence, sec. 1161) says: 'In fact the whole result depends upon the intention. If by express language, or by a reasonable construction of all its terms, the instrument shows an intention that the original form of the property shall be changed, then a conversion necessarily takes place.' " The doctrine of equitable conversion was invoked in the case of *Janes* v. *Throckmorton*, 57 Cal. 368, 382, and it was there said: "But the doctrine of equitable conversion is invoked by the defendant; and it is said, that as to the beneficiaries, the land, under the agreement, became personal estate, and their interest personal property. *Dodge* v. *Pond*, 23 N. Y. 69; *Lynn* v. *Gephart*, 27 Md. 547, and 2 Story's Eq. Jur., sec. 1214, are cited by defendant's counsel in support of this position. In *Lynn* v. *Gephart*, the Court cites the section from Story which reads thus: 'The inclination of courts of equity upon this branch of jurisprudence is not generally to change the quality of the property, unless there is some clear intention or act by which a definite character, either as money or as land, has been unequivocally fixed upon it throughout'; and, adds, that 'if this intention do not clearly appear, the property retains its original character.' " The citation of authorities to the same effect could be prolonged. From their consideration it cannot be said that under the Thursby will such conversion took place either by direction of the testatrix or by necessary or fair implication from the language used. The mere discretionary power to sell does not produce such result (*White* v. *Howard*, 46 N. Y. 162). [5] The language of the residuary clause in the Thursby will unquestionably had the effect of vesting the title to the real property in Robert Gracey at the moment of the death of Mrs. Thursby (Civ. Code, sec. 1341; *Estate of Patterson*, 155 Cal. 626 [132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.) 654, 102 Pac. 941]; *Estate of Benvenuto*, 183 Cal. 382 [191 Pac. 678]).

[6] When it became necessary to sell a portion of said real property to pay specific bequests, and when the whole

of said real property was sold, the surplus beyond the amount required for the purposes mentioned retained its character as real estate for purposes of distribution (2 Woerner on Administration, sec. 481; 24 C. J. 706).

[7] Nor do we think that any equitable conversion took place upon the death of Robert Gracey. As above indicated, the doctrine of equitable conversion is a device employed in equity to bring about equitable results. It is invoked to accomplish the intention of the testator and for the benefit of beneficiaries (6 Cal. Jur. 525, 526). There is no wording 'in the codicil appended to the Gracey will expressly directing the executor to convert said real estate into money, and we fail to discover from the language used by the testator any intent on his part by necessary or reasonable implication from the language used to require such conversion. Indeed, the plain intention is to the contrary, for if such conversion were intended and should be effectuated the entire California estate would be transmitted to the executor in the Pennsylvania administration and the benefactions under the codicil would be entirely defeated. We cannot ascribe such an intention to the testator. He must be held to have known that Mrs. Thursby had died before he executed the codicil and that the title to the real estate in California, or at least so much thereof as was not necessary to pay the funeral expenses and the bequests under the will of Mrs. Thursby, had vested in him and that the only way in which the beneficiaries under the codicil could receive their bounties would be by the probate of his will, including said codicil, in California, without an equitable conversion thereof into personalty. Otherwise his benefactions under the codicil would fail. Nor do we agree, as contended by appellants, that there was such a blending of personal and real estate by the testator as to show that he intended to create a fund and to make a testamentary disposition thereof in money. We conclude that the trial court did not err in refusing to apply the doctrine of equitable conversion to either the Thursby will or to the codicil of the Gracey will.

[8] It is next insisted by the appellants that if there was no equitable conversion under either will and if it be held, as we do hold, that the property in California was and is real estate for purposes of distribution, then Robert

Gracey died intestate as to such real estate. The contention is predicated upon the fact that in the codicil the word "devise" is not used and that the testator used the words, "I bequeath" one-half "of all the net amount that may come to me from said estate" to the "Public Library of the City of Merced," etc. It is argued that the use of the word "bequeath" was ineffectual to pass the title of said property as real estate. The contention appears to be that in order to effectuate the passing of title to real estate the word "devise" or other appropriate term applicable to real estate must be used. Section 1327 of the Civil Code provides: "Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense." In the application of the foregoing section of the Civil Code this court had under consideration, in *Estate of Henderson,* 161 Cal. 353 [119 Pac. 496], a question very similar to the one now presented with reference to the effect of the use of the terms "bequest," "legacies," "legatees," and "residuary legatees" in a holographic will as bearing upon the disposition of real property of the estate and where it appeared that the terms "devise" and "devisees" were not used. In that case it was said: "The primary purpose of all interpretation of wills is, of course, to ascertain the testator's intent, as disclosed by the language he has used. (Civ. Code, sec. 1317.) Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. 'Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills. It seldom happens that two cases can be found precisely alike, [citing cases] . . . The appellant argues, further, that, inasmuch as the estate (and the residue) included both real and personal property, such real property as was contained in the residue could not be covered by a gift over of 'legacies' given to 'legatees.' [9] But, while technical words in a will are ordinarily to be taken in their technical sense, they will not be so taken when it appears that they were used in another

sense by a testator who drew his will without an acquaintance with the technical sense. (Civ. Code, sec. 1327; *Estate of Peabody,* 154 Cal. 172 [97 Pac. 184].) The will before us was, as we have said, holographic, and it is perfectly clear from its provisions that the testator was unfamiliar with the distinctions between terms appropriate to testamentary gifts of personal and those of real estate. Although the estate comprises realty, the will does not contain the words 'devise' or 'devisee.' The testator makes gifts of his interest in real estate, and then speaks of the residue, after paying all the 'bequests herein provided for.' He makes provision for 'residuary legatees,' but says nothing of 'residuary devisees.' It is plain, therefore, that the testator used the terms 'bequests,' 'legacy,' 'legatees' and 'residuary legatees' loosely, and without regard to their exact technical meaning. In order to give full effect to these expressions they must be read as referring to gifts to takers of realty, as well as of personal property." (*Estate of Henderson, supra,* pp. 357, 358; *Estate of Budd,* 166 Cal. 286 [135 Pac. 1131].)

[10] So in the case at bar it appears that the codicil was holographic in form. As the appeal is on the judgment-roll alone the evidence is not before us. All intendments are in favor of the determinations of the trial court and in the absence of a contrary showing on this appeal it must be assumed that it appeared that the codicil was drawn solely by the testator and that he was unacquainted with the technical meaning of the term "bequeath" and intended by its use that it should apply to the takers of real property as well as personal property. [11] A will should be so interpreted as to render it operative, if it be reasonably susceptible of such interpretation, to the end that the intention of the testator be given effect and that intestacy be avoided (Civ. Code, sec. 1317; *Estate of Phelps,* 182 Cal. 752 [190 Pac. 17]; *Estate of Wilson,* 184 Cal. 63 [193 Pac. 581]; *Estate of Franck,* 190 Cal. 28 [210 Pac. 417]; *Estate of McCurdy,* 197 Cal. 276 [240 Pac. 498]; 26 Cal. Jur. 899). On the record before us it must therefore be concluded that the word "bequeath" was used by the testator not in its technical sense but as applying to both real and personal property. Such interpretation is reasonable and intestacy is thereby avoided.

[12] In determining the amount of the Gracey estate which it was competent for the testator to leave to the respondents for charitable and benevolent uses under section 1313 of the Civil Code the trial court fixed the net value of the estate in California *and elsewhere* and apportioned one-third of the total to the beneficiaries under the codicil. In this respect the appellants concede that the court followed the rule laid down in *Estate* of *Dwyer*, 159 Cal. 687. [115 Pac. 242], where it was held that in fixing the amount of the one-third of the estate which might be distributed to charitable uses under said section 1313 the aggregate estate *wherever situated* is to be taken into consideration. But it is insisted that the court erred in so fixing the aggregate of such estate for the reason that it appears that the administration of the estate of Gracey in Pennsylvania had not been closed and that additional costs of administration in that state *may* accrue. Here again the evidence is not before us, and in the absence of a showing to the contrary it must be assumed that sufficient competent evidence was before the trial court upon which to base its implied finding to the effect that the administration of the Pennsylvania estate had progressed to a point where no further costs would accrue. The burden was upon the appellants to show the insufficiency of the evidence to support the finding of the aggregate amount of said estate or to show some abuse of discretion on the part of the trial court and such showing has not been made.

We have examined the cases relied upon by the appellants and we find therein nothing inconsistent with the conclusions herein expressed as applied to the particular facts in this case.

The decree is affirmed.

Richards, J., Seawell, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.