[Civ. No. 9884. First Appellate District, Division Two.—October 7, 1935.]

In the Matter of the Estate of FRANCISKA G. OLSEN, Deceased. JULIA HUNSINGER et al., Appellants, v. HELENA LANDGREN et al., Respondents.

[Civ. No. 9896. First Appellate District, Division Two.—October 7, 1935.]

In the Matter of the Estate of FRANCISKA G. OLSEN, Deceased. STINA SIMONSEN et al., Appellants, v. HELENA LANDGREN et al., Respondents.

Carl W. Mueller, George M. Thomas, Louis R. Mercado, Jr., A. B. Weiler and Otto A. Hoecker for Appellants.

H. W. Hutton for Respondents.

SPENCE, J.—After the hearing on the petition for a decree of final distribution, the following minute order was entered by the clerk on August 9, 1934: "Heretofore submitted. Petition Helena Landgren, for Distribution. Granted to Helena Landgren, Katie McDonald and Mrs. Hertel."

Thereafter findings of fact and conclusions of law and a decree of distribution were signed and filed. Five days after the filing of the decree of distribution an amended decree of distribution was signed and filed. Appeals were taken by two groups of appellants. One group of appellants appealed from the amended decree of distribution. The other group of appellants appealed from the minute order of August 9, 1934, from the decree of distribution and from the amended decree of distribution. Said appeals have been consolidated upon stipulation of the parties.

All of the appellants contend that the court erred in construing the will of the deceased and in distributing all of the property thereunder to the respondents Helena Landgren, Katherine McDonald and Margaret Hertel. In our opinion this contention must be sustained and we shall therefore first discuss the construction placed upon said will by the court.

It was an holographic will which read as follows:

"San Francisco April 26th 1925

"In the Event of my death. I give and bequeath to Katie Krebb the Stock in the Tamalpais bank in San Rafail (the Mony in the Ithalien American bank.) the San Francisco Saving and Loan Society bank 526 California St to my Broder Ludwig Gramlich Valtin Gramlich son Waldhausen Amt Buchen Baden Germany Mrs. Julia Hunsinger 44 Bismark St. Ludwigshafen. A Rh. Germany Anna Neufeld Meckenheim. Past Hasloch Germany. to Frank Theis $250/= Erick Theis $250/= Walter Rothschild $250/00 Jenneth Landgren $250/00 the Children of Frank Gramlich $500/00. to Mamie Eber Beach. Hellena Landgren and Katie McDonald all my bonds alike after all my bills are paid. to Hellen Landgren Katie McDonald Her Sister Mrs. Hertel all my personal property I have to do as the liek the Executor of this my last will and Testament with out bonds. and hereby revok all former wills by me made

"FRANCIS G OLSEN

"(Witness.) FLORENCE L. ROTHSCHILD."

A photostatic copy of said will is before us. The will is legibly written but it is manifest that the testatrix, who was of foreign birth, was not particularly familiar with the English language and that she knew little of sentence structure, punctuation, spelling and the use of capitals. It is also

apparent that she was not familiar with the proper use of technical terms.

There is no dispute concerning the identity of the persons named in the will, who were as follows: Katie Krebb, a grand-niece; Ludwig Gramlich, a brother; Valtin Gramlich, a nephew, whose correct name was Franz Valentin Gramlich, residing at Waldhausen, Amt Buchen, Baden, Germany; Julia Hunsinger, a sister; Anna Neufeld, a sister; Frank Theis, Erick Theis, Walter Rothschild and Jenneth Landgren, whose relationship, if any, to the testatrix does not appear; the children of Frank Gramlich, a nephew; Mamie Eber Beach, a niece; Helena Landgren, a niece of the deceased husband of the testatrix; Katherine McDonald, a niece; and Margaret Hertel, a niece. It is further conceded by all parties that the words "to do as the liek" appearing near the end of the will were intended as "to do as they like".

The court found "That said testatrix, Franciska G. Olsen, also known as Frances G. Olsen, in and by the following language in her said last will, the said language being clear and distinct and absolutely irreconcilable with the former parts of said will and in the last part of said will, to-wit: 'to Hellen Landgren Katie McDonald Mrs. Hertel all my personal property I have to do as the liek' intended to and did devise, give and bequeath to the said Hellen Landgren whose correct name is Helena Landgren, Katie McDonald whose correct name is Katherine McDonald and Mrs. Hertel, whose correct name is Margaret Hertel, all the property, real, personal and mixed that she owned, possessed and/or had any interest in at the time of her death. Such construction of said language being preferred in order to prevent a total intestacy as to the whole of the real property of said estate." The conclusions of law, the decree of distribution and the amended decree of distribution were drawn accordingly and the entire estate was distributed in equal shares to the respondents.

The main controversy centers around the construction placed upon the last portion of the will. As to this portion of the will, the constructions placed upon it by the respective parties vary greatly, but as the will should be considered as a whole, we will first discuss the preceding provisions.

While the construction of the first portions of the will is not entirely free from difficulty, we believe that the intention of the testatrix is reasonably clear. She first left the

stock in the Tamalpais Bank in San Rafael to Katie Krebb. The question then arises as to the disposition of the money in the Italian American Bank and the San Francisco Savings and Loan Society. The use of the small letter in the word "the" preceding the word "Mony", the use of the period after the word "bank" and the use of what appears to be a parenthesis, should not be taken as controlling for the reasons hereinabove stated. (69 Cor. Jur. 85, sec. 1143.) Furthermore, the words "the Mony in" should be treated as relating to both banks. So treating said words, this portion of the will becomes entirely intelligible; otherwise, said portion is unintelligible. We therefore believe that said portion should be construed as giving the money in the Italian American Bank and the San Francisco Savings and Loan Society to Ludwig Gramlich, Valtin Gramlich, whose correct name is Franz Valentin Gramlich, Julia Hunsinger and Anna Neufeld. The testatrix then left the sum of $250 each to Frank Theis, Erick Theis, Walter Rothschild and Jenneth Landgren and the sum of $500 to the children of Frank Gramlich.

Up to this point in the will the parties are practically agreed upon what the testatrix intended by the words used. Coming to the last portion of the will, it appears to be conceded that the bonds were intended for Mamie Eber Beach, Helena Landgren and Katherine McDonald. Some of the parties relate the words "after all my bills are paid" to the bequest of the bonds, but it is again apparent in this portion of the will that we cannot treat as controlling the use of punctuation marks or the failure to capitalize the first word of each sentence. It is far more reasonable to assume that the words "after my bills are paid" relate to the remaining portion giving "all my personal property" to others. This construction is strengthened by the consideration that it appears that the testatrix had but one bond of the par value of $500, which was appraised at "nil", and it is not reasonable to assume that the testatrix intended that the persons named to receive said bond should receive only their proportionate shares of the remaining proceeds after the sale thereof and the payment of all bills.

The words which give rise to the main conflicting contentions of the parties are "to Hellen Landgren Katie McDonald and her Sister Mrs. Hertel all my personal property I have to do as the liek the Executor of this my last will and Testa-

ment with out bonds". Relating the words "after all my bills are paid" to this portion of the will, the phrase reads "after all my bills are paid. to Hellen Landgren Katie McDonald her Sister Mrs. Hertel all my personal property I have to do as the liek the Executor of this my last will and Testament with out bonds". Some of the appellants contend that this should be construed as a mere appointment of said parties as executrices; other appellants contend that it should be construed as an appointment of executrices and also as a bequest but merely as a bequest of personal effects; and respondents contend, as determined by the court, that it should be construed as an appointment of the executrices and as giving the entire estate, real and personal, to respondents and further contend that said language is "clear and distinct and absolutely irreconcilable with the former parts of said will" and should prevail over the former parts of the will. (Probate Code, secs. 103 and 104.)

We cannot agree entirely with either the contentions of appellants or those of respondents. The estate of the testatrix consisted mainly of money in bank, stocks, the bond above mentioned and two pieces of real estate. The real estate was appraised at about one-half the value of the entire estate.

In construing said will, we must bear in mind that "The very fact of making a will raises a presumption that the testatrix intended to dispose of all of her property." (26 Cal. Jur., p. 899.) Whenever a disputed word or phrase may be reasonably given either of two meanings, that meaning should be given which will prevent intestacy. While this rule is codified as to total intestacy (Probate Code, sec. 102), the principle is also applicable to avoid partial intestacy. (*Estate of Farelly*, 214 Cal. 199, 206 [4 Pac. (2d) 948]; *Estate of Heberle*, 153 Cal. 275 [95 Pac. 41]; *O'Connor v. Murphy*, 147 Cal. 148 [81 Pac. 406].) In other words, constructions which lead to either total or partial intestacy are not favored. (*Estate of Gracey*, 200 Cal. 482 [253 Pac. 921]; *Estate of O'Gorman*, 161 Cal. 654 [120 Pac. 33].) We must further bear in mind that technical words are not always to be taken in their technical sense when used in a will. A nontechnical meaning may be given to such words where the will is drawn solely by the testatrix and it appears that she was not familiar with such technical terms. (Probate Code, sec. 106; *Estate of Gracey, supra.*)

While the words "personal property", when used technically do not include real estate, these words and other words ordinarily used in a restricted sense have frequently been given a broader meaning when used by persons unfamiliar with technical terms. (*West* v. *West*, 215 N. Y. App. Div. 285 [213 N. Y. Supp. 480]; *In re Swentzell's Estate*, 294 Pa. 261 [144 Atl. 129]; *Harding's Estate*, 1 Pa. Dist. & Co. Rep. 538; *Estate of Miller*, 48 Cal. 165 [17 Am. Rep. 422]; *In re McKendrie's Estate*, 150 Misc. 665 [271 N. Y. Supp. 228]; *First Nat. Bank of Saugerties* v. *Hurlbut*, 22 Hun (N. Y.), 310; 50 C. J., p. 759, sec. 32.) The tendency to avoid restricted meanings where such meanings result in partial intestacy, is well illustrated in *Estate of Miller, supra,* where the word "money" was held to include other personal property and also real property. (See, also, *Estate of Carrillo*, 187 Cal. 597 [203 Pac. 104].) In *West* v. *West, supra,* the court held that the words "my personal property" included real property, the court treating the expression as meaning "my own property" or "the property I own personally". It is there pointed out that the fact that the will contained no residuary clause in the ordinary form indicated that "the testator thought that he had disposed of all of his property by the dispositive provisions of the will". (Quoting from 2 Redfield on Wills, 3d ed., 235, the court said: "The idea of any one deliberately purposing to die testate as to a portion of his estate, and intestate as to another portion, is so unusual, in the history of testamentary dispositions, as to justify almost any construction to escape from it." We believe this to be the correct rule with the qualification that "Interpretation must be reasonable." (Civ. Code, sec. 3542.)

In *Harding's Estate, supra,* the words "personal properties" were held to mean "my properties". In 50 C. J. 759, in treating the words "personal estate", it is said, "But this expression may be used to indicate private, individual, or separate property, the estate which belongs to someone 'personally', and not to mean personal property as distinguished from real estate."

In the case of *Estate of Puett*, 1 Cal. (2d) 131 [33 Pac. (2d) 825], cited by appellants in support of their claim for a narrower meaning for the words "personal property", the court declares that "the interpretation to be given a particular testamentary instrument must turn upon the lan-

guage peculiar thereto'' and that decisions in other cases are of but little assistance other than to announce the rules of construction. It is stated on page 133 that, ''It is generally recognized that a testamentary instrument is to be examined with a view to discovering the decedent's testamentary scheme or general intention, and that the *apparent meaning of particular words, phrases and provisions is to be subordinated to this scheme, plan or dominant purpose.''* (Italics ours.)

In the light of the foregoing rules and authorities, we believe that words ''all my personal property'', as used by the testatrix in the will before us, should be interpreted as meaning ''all my own property'' or ''all my property which I own personally'' and as including real property as well as what is technically known as personal property. This was the construction placed upon this expression by the court below but the court went further and concluded that this provision of the will was absolutely irreconcilable with the previous provisions of the will and therefore prevailed over such previous provisions. The result was to defeat and render void all the preceding provisions of the will.

We are of the opinion that the last-mentioned conclusion cannot be sustained. This conclusion is based upon the last phrase of section 103 of the Probate Code, which section reads as follows: ''Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail.'' After the court below had concluded that the last portion of the will purported to cover both real and personal property, it took the position that said last portion was absolutely irreconcilable with the former portions making specific bequests. We believe that this position ignores the portion of the section providing that ''all parts of a will must be construed in relation to each other, and so as, if possible, to form one consistent whole''. It will be noted that the bequests set forth in the first part of the will are specific, while the language of the last part of the will is general. The rule under these circumstances is to treat the specific gifts as exceptions to the general gift rather than as inconsistent or irreconcilable with such general gift. (Page on Wills, sec. 865, p. 1462;

Thompson, Construction of Wills, sec. 96, p. 177; Redfield, 3d ed., Wills, p. 418, and cases cited.) This rule gives effect to the specific bequests and is in accord with the provisions of section 3541 of our Civil Code, which provides: "An interpretation which gives effect is preferred to one which makes void." It further gives a residuary effect to the last portion of the will before us, and taking the will by the four corners we are satisfied that this was the intention of the testatrix. (*Harrison* v. *Jewell*, 2 Dem. Rep. (N. Y.) 37.)

We therefore conclude that a decree of distribution should have been entered giving effect to the specific bequests contained in the will and distributing the remaining estate to respondents. As we are of the opinion that there was no intestacy as to any portion of the estate, we need not consider the claim of certain appellants to the effect that the property was the community property of the testatrix and her husband who predeceased her by nineteen years. The claim of these appellants under section 228 of the Probate Code is entirely dependent upon the soundness of their contention that the testatrix died intestate as to some of her property.

In disposing of these appeals, we have yet to consider the relationship between the minute order, the decree of distribution and the amended decree of distribution. As stated above, appeals were taken from all three. In our opinion the appeal from the minute order should be dismissed as said order was merely a preliminary order for a decree of distribution rather than a decree of distribution. "An order for a judgment is not a judgment." (*United Taxpayers Co.* v. *San Francisco*, 55 Cal. App. 239, 243 [203 Pac. 120].) While a decree of distribution need only be "entered at length in the minute book of the court" and need not be a separate instrument signed by the judge and filed (Probate Code, sec. 1221), the question still remains as to whether a particular entry in the minute-book constitutes an order for a decree of distribution or the decree itself. It is a matter of common knowledge that a preliminary order for a decree of distribution is customarily entered in the minute-book and that thereafter a separate instrument is customarily signed by the judge, filed and copied at length into the minute-book. It seems entirely apparent from a reading of the minute order of August 9, 1934, hereinabove set forth, that it was the

customary order for the decree of distribution and nothing more.

After the entry of said minute order, a decree of distribution and an amended decree of distribution were entered. It seems to be conceded that the amended decree of distribution was entered for the purpose of correcting a clerical error in the decree of distribution and none of the parties have questioned the action of the trial court in entering an amended decree for that purpose. In ordering a reversal we therefore deem it unnecessary to consider the relationship between the decree and the amended decree, but believe it proper to reverse both the decree and the amended decree.

The appeal from the minute order entered on August 9, 1934, is dismissed. The decree of distribution and the amended decree of distribution are reversed with directions to the trial court to enter a decree of distribution consistent with the views expressed herein.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 6, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1935.

Langdon, J., voted for a hearing.