# Johnson's Estate.

*Decedents' estate — Widow's election — Election attacked for fraud—Evidence.*

1. Where a widow has elected to take under her husband's will and has complied with the formalities required by the Act of April 21, 1911, P. L. 79, under circumstances which show that no undue advantage was taken of her, and that she was fairly informed of her legal rights, and of the facts necessary to an intelligent choice, her acceptance of the will, duly executed and made of record, should not be lightly set aside.

2. A widow who had elected to take under her husband's will petitioned the Orphans' Court for leave to withdraw her election, alleging that the attorney for the executor had persuaded her to accept the will, that she was in a nervous condition when she signed the election, that she had not had sufficient knowledge of the value of her husband's estate to enable her to make an intelligent choice, and that she was in ignorance of her rights, and was not informed of the effect of the paper which she signed, all of which was denied by the executor. There was evidence sufficient to support the findings of the court below that petitioner had a normal mind, when she signed the election, that no influence was brought to bear on her when she accepted the will, that she was informed of her rights under the law and of the value of the estate, which was about one and a half million dollars; and that she was told if she should take under the will she would receive $25,000 per year and nothing else, but that if she should claim under the intestate law she would be entitled to one-half of the personal property absolutely, and that nearly the whole estate was personal property. The court entered a decree denying the relief prayed. *Held,* no error.

Argued Feb. 25, 1914. Appeal, No. 58, Jan. T., 1914, by Mary H. Johnson, from decree of O. C. Lackawanna Co., Year 1912, No. 411, denying leave to withdraw a widow's election to take under her husband's will in Estate of O. S. Johnson, deceased. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Petition by a widow for leave to withdraw her election to take under her husband's will.   Before SANDO, P. J.

The opinion of the Supreme Court states the facts.

The court denied the prayer of the petition.  The petitioner appealed.

*Error assigned* was the decree of the court.

*W. J. Torrey,* of *Welles & Torrey,* for appellant.

*Everett Warren,* of *Warren, Knapp, O'Malley & Hill,* with him *O'Brien & Kelly,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, March 30, 1914:

Orlando S. Johnson died, testate, May 24, 1912, leaving a widow and no issue.  He provided that his wife should receive $25,000 a year for life, payable in equal monthly instalments, in lieu of dower and all other rights in his estate; and in this connection he noted the fact that he was carrying a large amount of life insurance (about $30,000), "which will come into her hands upon my death"; he then gave $50,000 in legacies to certain of her relations, but directed that in case she should decline to take under his will or "demand any other or further or different interest whatever" in his estate, these legacies should fail; after a number of personal bequests to friends and relations, the testator left the balance of his estate to found a training school for boys and girls, and appointed the Scranton Trust Company his executor.  Mrs. Johnson was sixty-three years old, and was abroad when her husband died; they had lived apart under a mutual understanding and she had only seen him on three or four occasions during the last six years of his life.  News of Mr. Johnson's illness had been cabled to his wife, and upon her arrival in New York, on the morning of June 8, 1912, she was met by a

brother-in-law, who informed her of her husband's death and told her that the attorney for his estate was in the city, if she desired to meet him. About half past two in the afternoon of that day, at Mrs. Johnson's request, her brother-in-law and the attorney called at her apartment, and she executed a written acceptance of the provisions of the will. On April 28, 1913, she filed a petition alleging that her husband's estate amounted to about $1,600,000, that she was in "a nervous condition" when she elected to take under the will, and the attorney for the executor "persuaded" her to sign the acceptance, that at the time she was not informed of the value of the estate, that, although the document was read to her, she was unable because of her "nervous and distraught condition to comprehend the meaning of the terms of the will," that when she accepted the will she did not have sufficient knowledge of the estate to enable her to make an intelligent choice "between the provisions made for me by my husband's will and what I would be entitled to under the law if I refused to take under said will," that she was in ignorance of her rights and was not informed of the effect of the paper which she signed, and that the information given her was "imperfect, erroneous and misleading"; she prayed that her acceptance be declared a nullity and that she be permitted to take against the will,—the monthly instalments already paid to be deducted from her distributive share. The executor filed an answer in which it denied the material averments of the petition and alleged that Mrs. Johnson was told the value of her husband's estate, as nearly as could be ascertained at the time, that she was fully and expressly informed as to her legal rights, that she accepted the terms of the will voluntarily, and that no effort was made to persuade her so to do. After hearing, the Orphans' Court refused to grant the relief prayed for, and Mrs. Johnson has appealed.

The court below made a number of specific findings, among others, that Mrs. Johnson possessed a normal

mind and that no influence was brought to bear upon her when she accepted the will, after which it proceeded to state the following summary of the ultimate, or controlling, facts in the case: "At the time Mrs. Johnson made her election she was informed as to her rights under the law, as to the value of the estate, and as to such other facts as it was necessary for her to know to intelligently exercise her choice; Mrs. Johnson was informed that she might take time to consider the matter as she saw fit......; the will was read to her slowly, clearly and distinctly, and she was requested to ask any questions with reference to the things that she did not understand; she was told the value of the estate would be about one and a half million dollars, which statement the inventory filed in the estate proves to have been substantially correct; she was told that if she accepted the provisions of the will she would get the $25,000 per year which it provides and nothing else, whereas, if she saw fit to claim under the intestate law she would be entitled to one-half of the personal property absolutely, and that nearly the whole estate was personal property."

The Act of March 29, 1832, P. L. 190, 200, allows a widow twelve months in which to make her election, and provides that, if after that time she is cited by the Orphans' Court and fails to elect, such "neglect or refusal shall be deemed an acceptance......, of which a record shall be made, which shall be conclusive on all parties concerned." The Act of April 21, 1911, P. L. 79, provides, "That surviving......wives electing to take under or against the wills of decedents shall, in all cases, manifest their election by a writing signed by them, duly acknowledged by them before an officer authorized by law to take acknowledgments of deeds, and deliver it to the executor or administrator of the estate of such decedent"; further, that no payments shall be made to any widow unless she shall have made her election as required by the act, and that "such an election, or a certified copy of the final decree of any Orphans' Court,

in cases where there has been a neglect or refusal to elect" shall be recorded in the offices of the recorder of deeds and register of wills. The paper signed by the appellant was executed and recorded as required by the Act of 1911, supra; and it may well be contended that this statute purposed to put the written election therein provided for on a par with, and to make it as conclusive as, a court record under the earlier act. But it is not essential to this case that we decide that point, nor is it necessary to determine the question of the burden of proof, urged upon us by the appellant. No matter what view may be taken on either of these points, the evidence believed by the judge who saw and heard the witnesses was amply sufficient to sustain all his material findings of fact, and even under our decisions prior to the Act of 1911, supra, including those cited by the appellant, these findings fully support the decree. Although the Act of 1832 allows a year in which to make an election, one may validly do so within that time; and since the Act of 1911 provides that no payments whatever shall be made to a widow until she elects in accordance with its terms, promptness on the part of the executors in calling the matter to the widow's attention is not, in itself, open to just criticism. If the latter act is to be given any real effect and an election thereunder is to have any stability at all, then in a case like the present, where no undue advantage was taken of the widow and she was fairly informed of her legal rights and the facts necessary to an intelligent choice, an acceptance of the will executed and made a record with all the formalities required by the statute, should not be lightly set aside.

After reading the testimony and considering the numerous authorities cited to us, we are not convinced of reversible error; the assignments are overruled and the decree is affirmed, at the cost of the appellant.