## Mitchell's Estate.

John G. Love, for petitioner.
W. Harrison Walker and N. B. Spangler, for heirs.
James C. Furst, for guardian of minor heirs.

FLEMING, P. J., April 24, 1929.—This matter is before the court on exceptions filed to the petition of John Mitchell, surviving spouse of the above-named decedent, asking for an allowance to him of $5000 as such surviving spouse, under the provisions of section 2 of the Intestate Act of June 7, 1917, P. L. 429. We have before us the following

*Facts.*

1. The above-named decedent died on July 9, 1928, having first made her last will and testament bearing date of Nov. 2, 1926, wherein she named her husband, John Mitchell, as the sole executor thereof.

2. That the last will and testament of said decedent was duly probated on July 17, 1928, and remains of record in the office of the Register of Wills of Centre County, letters testamentary thereon having been granted to John Mitchell according to the tenor of said last will and testament on the date of probate.

3. That on July 24, 1928, the said John Mitchell, surviving spouse, executed and acknowledged his election to take against the will of the decedent, which election was filed and recorded in the office for the recording of deeds, etc., in and for Centre County on the same day and was recorded therein on July 25, 1928, in Miscellaneous Book, Volume V, at page 150.

4. That such election was not, and has not been, at this date, filed in the office of the Register of Wills of Centre County.

5. That the said John Mitchell, surviving spouse, now seeks to withdraw said election.

6. That by the terms of decedent's said last will and testament she provides, *inter alia*, as follows, to wit:

746

"Second. I direct that the following disposition be made of the $9800.00 in notes held by me against Elmer Witmer, namely: Of the first two notes of $2000.00 each I direct that $1000.00 of each of these notes be paid to my husband John Mitchell and the other $1000.00 of each of these notes shall be equally divided between my nephews and niece, namely, Brown McFarlane, William McFarlane and Margaret McFarlane, as these notes fall due.

"Third. The balance of these said Elmer Witmer notes which amounts to $5800.00 shall then be disposed of as follows:

"1st. To Mrs. Maud Mitchell I give and devise the sum of $1000.00.

"2nd. To the Spring Creek Cemetery I give and devise the sum of $1000.00 to be used as a trust fund by the trustees and the income used to maintain and keep in order & neatness the said cemetery and the graves of my parents and my family in particular.

"3rd. To the Spring Creek Presbyterian Ladies Missionary Society I give and devise the sum of $100.00.

"4th. To the Old Ladies Home at Hollidaysburg (Presbyterian) I give and devise the sum of $100.00.

"5th. To each of the children of Henry Thompson, namely, Hutchinson Thompson, Mrs. Mary Stonerode, Taylor Thompson, William Thompson, Nannie Thompson, Bruce Thompson, Robert Thompson and Priscilla Thompson, I give and devise the sum of $25.00.

"6th. To each of the children of George Mitchell, namely, Hutchinson Mitchell and James Mitchell, I give and devise the sum of $25.00.

"7th. To Mrs. Mary Payne for faithful services rendered I give and devise the sum of $25.00.

"8th. I direct that after the above bequests have been paid out of the aforementioned $5800.00, then the balance remaining shall be paid to my nephews and niece, namely, Brown McFarlane, William McFarlane and Margaret McFarlane, share and share alike.

"Fourth. I direct that the income from my farm in College Township, Centre County, shall be paid annually to my husband John Mitchell during his life and then the said farm shall be given to my nephews and niece, Brown McFarlane, William McFarlane and Margaret McFarlane, with the reservation however that should my executor in his judgment be able to make an advantageous sale of said farm then he is authorized to do so and give one-half of the price received to my husband, John Mitchell, and the other half share and share alike to my nephews and niece, Brown McFarlane, William McFarlane and Margaret McFarlane. In the event of the death of either, Brown or William or Margaret McFarlane, then the share that would belong to such deceased nephew or niece shall be equally divided between the surviving nephews or niece in *all* the bequests made to them in this my last will and testament."

7. The first of the two Elmer Witmer notes for $2000 mentioned in the second item of decedent's last will and testament was paid by the maker to the decedent in her lifetime at its maturity.

8. The three remaining Elmer Witmer notes for $2000 each and the one Elmer Witmer note for $1800 were anticipated and paid before maturity by the maker to the decedent in her lifetime.

9. The farm mentioned in the fourth item of decedent's last will and testament was sold during the lifetime of the decedent to Jesse Klinger for $12,000, $5000 being paid in cash and a purchase-money mortgage for $7000 being given.

10. That the appraisement filed in the office of the Register of Wills shows decedent's estate to consist as follows:

| | |
|---|---|
| Mortgage—J. W. Klinger, dated Mar. 24, 1928 | $7,000.00 |
| 3 Penna. R. R. Co. bonds—40 yr.—5% | 3,112.50 |
| 4 State College Hotel Co. bonds | 2,000.00 |
| 1 Phila. Co.—5% Gold Bond | 495.00 |
| 78 Shares Penna. R. R. Co. stock | 5,070.00 |
| Cash in 1st Nat'l Bank of Bellefonte, Penna | 1,553.75 |
| | $19,231.25 |

*Questions involved.*

1. Has there been such compliance with the provisions of section 23 *(e)* of the Wills Act of 1917 as to constitute an election by the surviving spouse to take against the decedent's will?

2. If such compliance is found to have been made, does the surviving spouse have the right to withdraw such election, a period of one year not having elapsed since the death of the decedent?

3. Are the legacies and devises mentioned in decedent's last will and testament specific or demonstrative?

4. If specific, were they so changed in the lifetime of the decedent as to be adeemed, thus causing an intestacy as to decedent's estate and permitting the $5000 allowance sought by the surviving spouse under the provisions of section 2 of the Intestate Act of 1917?

*Discussion of questions involved.*

*1. Has there been such a compliance with the provisions of section 23 (e) of the Wills Act of 1917 as to constitute an election by the surviving spouse to take against the decedent's will?*

Section 23 *(e)* of the Wills Act of 1917 provides as follows: "The election by a surviving spouse, or a certified copy of the final decree of any Orphans' Court, in cases when there shall have been an election in accordance with clause *(d)* hereof, or a neglect or refusal to elect within the time prescribed by the order of the said court, shall, at the cost of the estate, be recorded, by the personal representative of the decedent, in the office for the recording of deeds of the county where the decedent's will is probated, in the deed book, and shall be indexed by the recorder in the grantor's index under the name of the decedent, and in the grantee's index under the name of the surviving spouse, and shall be registered in the survey bureau, or with the proper authorities empowered to keep a register of real estate, if any there be, in said county. The charges for recording and registering shall be the same as are provided by law for similar services. The election, or decree of the court, or a certified copy of either, may also be recorded in any office for the recording of deeds within this Commonwealth, with the same effect as if a duly signed and acknowledged declaration to the effect stated therein had been made by the person authorized to elect, and at his or her request, recorded in said office according to law. After the said election shall have been recorded in the office for the recording of deeds as aforesaid, the said election, at the cost of the estate, shall be filed in the office of the Clerk of the Orphans' Court and a record made of such filing by the said clerk."

The relevancy of this question becomes apparent when we consider that the right of the husband to the $5000 special allowance in case of intestacy has no application to cases where the husband elects to take against the will:

Mitchell's Estate, 79 Pa. Superior Ct. 208; Lucas's Estate, 277 Pa. 553; Collom's Estate, 47 Pa. C. C. Reps. 434, 28 Dist. R. 503.

Compliance with the above quoted section has not been had in the following respects, viz.:

*(a)* The election has not been recorded in the deed book, it appearing that the same was recorded in Miscellaneous Book, Volume V, page 150.

*(b)* The name of the decedent has not been indexed in the grantor's index.

*(c)* The name of the surviving spouse has not been indexed in the grantee's index.

*(d)* The election has not been filed in the office of the Clerk of the Orphans' Court and a record made of such filing by said clerk.

No allegation has been made, nor could such be sustained, if made, that the rights or interests of any other person, who might have depended upon the record of the alleged election, have been affected, other than that, were we to hold this alleged election valid and irrevocable, the surviving spouse would be barred from his right to the $5000 special allowance under the cases cited above.

We are of the opinion that the procedure prescribed by section 23 *(e)* of the Wills Act, manifesting the election, is mandatory and that such procedure has not been followed in this case. While the election was entered for record in the office for the recording of deeds, and was therein recorded, it was not recorded in the deed book as the act requires. Nor was it indexed in compliance therewith, nor was it filed with the clerk of this court and proper notation made upon our records. The procedure followed is not that of the statute, and if for no other reason, should be set aside: Kester's Estate, 23 Luzerne Legal Reg. 82; Smith's Estate, 16 Del. Co. Reps. 186. The requirements of the statute were not enacted arbitrarily nor without reason. Nor does the fact that the setting aside of the election in the instant case will permit the surviving spouse to further advance his contentions as to the intestacy of the decedent affect the determination of the matter in any way.

The purpose of the legislation was to provide for security of titles to real estate of a decedent, and for this reason a written election, duly acknowledged, was required, and such an election, when properly filed of record, has the same effect as a decree of court under the earlier acts: Johnson's Estate, 244 Pa. 600, 604. In other words, recording in the office for the recording of deeds was required by the act for the same reason that deeds are required to be recorded in such office to secure titles to the proper owners. The requiring of such elections to be recorded in the *deed book* was specified because it is there, and not in miscellaneous books, that titles are recorded and remain open for the inspection of interested parties. The provision for indexing such elections further conforms to the general requirements which look to the security of titles to real estate. That in the particular case before us no real estate is involved does not affect the rule in determining the election herein made. The act is mandatory and is based upon reason, and must be complied with by all, regardless of the existence or non-existence of real estate in any particular case.

The further requirement compelling the filing of such election in the office of the Clerk of the Orphans' Court is in furtherance of the purpose of giving complete notice to all interested. "The purpose of the legislation was to give accurate information to the executor of the purpose of the husband and wife so that a proper adjustment of the assets could be made:" McCutcheon's Estate, 283 Pa. 157, 161. For the same reason we find the requirement of filing with the clerk of this court and the entry of a proper record herein. The

fact that the surviving spouse and the executor, in the instant case, are one and the same person does not change the rule. It is general and must apply in all cases.

The only semblance of a compliance with the statute in this case is the executing and acknowledging of the election. Every other mandatory requirement has been omitted. The alleged election is a nullity and should be set aside.

*2. If such compliance is found to have been made, does the surviving spouse have the right to withdraw such election, a period of one year not having elapsed since the death of the decedent?*

Having determined above that compliance with the requirements of the statute has not been made, further consideration of this question is unnecessary. We are of the further opinion, however, that, even though the requirements of the statute had been fully met, it would have been proper to permit the withdrawal of the election under existing facts. The decedent died July 9, 1928. Her will was probated and letters testamentary issued to her surviving spouse on July 17, 1928. The election to take against decedent's will was executed and acknowledged July 24, 1928, and the petition of the surviving spouse, upon which our present controversy arises, was executed on Aug. 2, 1928, and preliminary decree made by us on Aug. 7, 1928. The inventory and appraisement, revealing the exact character of decedent's estate, was filed on July 16, 1928. It is, therefore, to be noted that all these various steps occurred within a period of less than one month from the date of decedent's death. By the provisions of section 23 *(d)*, the surviving spouse could not have been compelled to file his election until a six months' period after the death of the decedent had elapsed, nor could he have been compelled, as executor, to render an accounting until after a like period had elapsed. No steps had been taken toward distribution, nor was distribution approaching or at hand at the time the surviving spouse became aware of the probable ademption of the legacies and the devise, and was thus afforded an opportunity to choose to test the question as to the intestacy of his wife. The instant case differs materially from Baily's Estate, 285 Pa. 408, and other cases, wherein, after the lapse of considerable time, the surviving spouse had desired to revoke an election previously made. The law has most wisely erected a six months' period following the death of a decedent wherein all concerned, whether as surviving spouse, executor, administrator, legatee, devisee, heir or creditor, may well reflect and adjust their respective positions. In the instant case, before the end of one of these six months, the surviving spouse had readjusted his position and stated his purpose as it is now before us. If action has been taken by husband or wife to take or not to take under a will, in ignorance of the value of the estate or of the rights which would accrue under the intestate laws as compared with the rights under the will, the first election may be set aside and the distribution made in the manner provided by law: McCutcheon's Estate, 283 Pa. 157. See, also, Hubley's Estate, 2 Somerset, 604. As we have pointed out above, no rights were prejudiced by the surviving spouse's attempt to file an election. The matter is in the same status as would have existed had the spouse omitted the attempted election to take against the will. We are, therefore, of the further opinion that, had the election herein been in conformity with the statute, the surviving spouse should be permitted to withdraw the same, he having acted promptly and with no delay and no rights being prejudiced thereby.

*3. Are the legacies and devises mentioned in decedent's last will and testament specific or demonstrative?*

We now approach the consideration of the most important of the questions involved herein. Upon the determination of this question rests, in a most vital degree, the interests of the several parties now before the court. We must realize the responsibility that is ours to interpret the meaning of the testator. We are concerned not alone with the interests of the parties litigant, but with the interests of the decedent as she regarded them at the time of the making of her last will and testament. The Supreme Court has said that "precedents in will cases are of little value:" Swentzell's Estate, 294 Pa. 261, 265. We must seek general rules in considering the matter before us. "We must consider the whole will, all the language employed in the residuary clause, the circumstances surrounding the testator when he wrote it, and the amount and character of his property. 'While we should search for the intent of the testator only within the four corners of the will, yet, when we come to consider the will and interpret its meaning, we must do so in the light of all the circumstances by which testator was surrounded when he made it; to this end, his family, and the amount and character of his property, may and ought to be taken into consideration:'" Frisbie's Estate, 266 Pa. 574, 578; Mayer's Estate, 289 Pa. 407; Swentzell's Estate, 294 Pa. 261.

Counsel for the surviving spouse contends that the legacies involving the Elmer Witmer notes and the devises concerning the farm in College Township were specific, and, having been converted by the testator, in her lifetime, and by her own act, were, therefore, adeemed, resulting in decedent's intestacy and the subsequent right of the surviving spouse to the $5000 special allowance and the further right to distribution of decedent's property under our intestate laws. What operates to make a legacy or devise specific and what operates to make such demonstrative? Keeping in mind the rules by which we seek the true intent of the testator, we proceed to ascertain the existing tests and to apply them to the instant case.

In Wall v. Stewart, 16 Pa. 275, Bell, J., says, in part, as follows: "The courts are disinclined to recognize specific legacies because of their liability to sink with the destruction of the thing bequeathed or the fund charged. But as it was obviously impossible to esteem as purely pecuniary many of the testamentary gifts which judges inclined to withdraw from the class of specific legacies, they were driven to borrow from the civilians a term thought to be descriptive of a species of donation holding a middle plan between specific and pecuniary—the only kinds distinctly recognized when Swineburne wrote. They are called *demonstrative*, and, like general legacies, are gifts of mere quantity, but differ from these by being referred to a particular fund for payment. They are so far general, that if the particular fund be called in or fail, the legatees will be permitted to receive their legacies out of the general assets; yet so far specific as not to be subject to abatement, with general legacies, on a deficiency of assets. They are thus specific in one sense, and pecuniary in another; specific, as given out of a particular fund, and not out of the estate at large; pecuniary, as consisting only of definite sums of money and not amounting to a gift of the fund itself, or any aliquot part of it, the mention of the fund being considered rather by way of demonstration than of condition—rather as showing how or by what means the legacy may be paid, than whether it shall be paid at all."

A specific legacy is a gift by will of a specific article or a particular part of the testator's estate which is identified and distinguished from all others of the same nature and which can be satisfied only by the delivery and receipt of the particular thing given. A specific legacy may be looked upon as one

which the testator has separated from the general mass of his property for the benefit of a particular legatee: 28 Ruling Case Law, § 263.

A demonstrative legacy partakes both of the nature of a general and specific legacy. It is a gift of money or other property payable out of or charged on a particular fund in such a way as not to amount to a gift of the *corpus* of the fund or to evince an intent to relieve the general estate from liability in case the fund falls. Two elements are necessary to constitute a demonstrative legacy, viz., it must appear, first, that the testator intended to make an unconditional gift in the nature of a general legacy; and, secondly, the bequest must be given with reference to a particular fund as a primary source of payment: 28 Ruling Case Law, § 266.

Whether a devise is specific or general is a question of construction and is to be determined by the same tests as when the subject of the gift is personal property. By a specific devise is meant a testamentary gift of a part of the decedent's real estate identified and differentiated from all other parts: 28 Ruling Case Law, § 265.

Courts are averse to construing legacies to be specific, and will not, unless it be clear that the testator so intended. This is because a general legatee has greater protection against the risk of ademption. If compatible with the language employed, they are disposed to interpret gifts as general legacies; but if the language is clear and unequivocal and plainly evidences the intent of the testator to create a specific legacy, such effect must be given to that language. In cases of doubt as between a demonstrative and a specific legacy, the courts incline towards the construction which classifies the legacy as demonstrative, and a clear intention must appear in order to make a legacy specific rather than demonstrative: 28 Ruling Case Law, § 267.

In the instant case, our decedent, Janet M. Mitchell, was childless. She resided happily with her husband. Her interests were centered in her church and in those next of kin whom she saw fit to mention in her will. On the day of making her will, she called in Squire Dreese, a neighbor, and instructed him to prepare her will. She was going away for treatment on the day following. At the time of making her will she was possessed of the Elmer Witmer notes, five in number, the face of which amounted to $9800 and which matured at stated periods. She was then possessed of a farm in College Township. While these notes and this farm constituted a valuable estate, yet it was not liquid and could not be divided among those upon whom she desired to bestow her beneficence. The Witmer notes were not yet due and payment could not be forced until maturity. A buyer was not yet at hand for the farm. Yet our decedent was about to leave her home for treatment. It is reasonable to presume that having become ill enough to require her going away for treatment, she realized the uncertainty of life, particularly under such conditions, and sought to express her wish as to the disposition of her estate in the event that she would not return. The Elmer Witmer notes possessed no peculiar associations or exceptional value. They represented merely choses in action with future cash values. The farm was of a like nature. That she was willing for it to be sold when an advantageous buyer should appear is evidenced by her direction permitting her husband to sell it, as is found in her will. She sought to dispose of all of her estate. She did not have actual cash sufficient to provide for the various persons and organizations for which she wished to provide. But she had things of value, incapable of being divided as she wished, and which could not have been divided without prejudice to or spoiling the whole. These were such things as would produce the cash necessary to fulfill her wishes. She pointed, therefore, to these things

as the funds from which her wishes could be realized and without which such wishes could not have been fulfilled. That it was cash which she was disposing of and not notes is evidenced by her declaration that from each of the first two $2000 notes, $1000 should be paid to her husband and $1000 to designated nephews and niece. She looked upon these notes as a fund from which the necessary money should spring. She considered it as the only available source from which payment could come at that time, as her farm was unsold and no immediate buyer was present. She realized that cash could be raised on the notes, by way of discount, at any time, but she could not be assured that cash would arise from the farm in such a ready manner. She pointed, therefore, to the notes as a fund from which her wishes could be fulfilled, leaving the farm to her husband, nephews and niece, they being of her own kin. Her disposition was of a mere quantity, but was referred to a particular fund for payment, such then being the only fund to which she could look for an immediate realization of her wishes. In short, she wished to immediately provide for her husband, her nephews and niece and for the various other legatees named. She had no immediate cash fund available. She knew the notes were the equivalent of ready cash and that from such source her wishes could be met. She pointed to the notes as a fund for this purpose. With these immediate legacies disposed of, she turned attention to the farm, an asset slower by way of realizing ready cash, and expressed her wish as to what should be done with it until sold and her further wish as to the disposition of the proceeds when sold. ·

The further fact appears that our decedent concerned herself no further with a last will and testament after the notes had been paid and her farm sold. Knowing of her as a prudent woman and having seen her prudence exhibited by her desire to make a will before leaving for treatment, we are entitled to infer from her own failure to further dispose of her estate after the conversion of the notes and farm into cash that it was her intent that the will now before us should be taken as her final wish, regardless of such conversion. We are of the opinion that such legacies and devises as refer to the Elmer Witmer notes and to the College Township farm were intended by our decedent to have been merely demonstrative and not specific legacies and devises.

4. *If specific, were they so changed in the lifetime of the decedent as to be adeemed, thus causing an intestacy as to decedent's estate and permitting the $5000 allowance sought by the surviving spouse under the provisions of section 2 of the Intestate Act of 1917?*

Having ascertained the legacies and devise in question not to have been specific, but merely demonstrative, further discussion of this question is unnecessary.

### Conclusions.

1. The election heretofore made by the surviving spouse to take against the will of the decedent is not in conformity with the requirements of the Wills Act and should be set aside.

2. That the request of the surviving spouse for leave to withdraw his election to take against the will of the decedent should be allowed.

3. That the legacies and devise here in question are not specific, but merely demonstrative.

4. That no intestacy exists as to the legacies and devise here in question.

5. That the petition of the surviving spouse for the $5000 special allowance under the Intestate Act of 1917 should be dismissed.

### Decree.

And now, April 24, 1929, it is hereby ordered, adjudged and decreed that the election heretofore made by John Mitchell, surviving spouse of Janet M. Mitchell, deceased, to take against the will of said decedent be and is hereby set aside and ordered stricken from the records; and it is further ordered, adjudged and decreed that the petition of the said John Mitchell, surviving spouse, for the allowance of the $5000 special allowance, as provided by section 2 of the Intestate Act of 1917, be and is hereby dismissed. The said John Mitchell, surviving spouse, to pay the costs of this proceeding.

From S. D. Gettig, Bellefonte, Pa.