[Civ. No. 15775.   Second Dist., Div. Three.   July 23, 1947.]

Estate of EDITH ALBERTA WIGNALL, Deceased.  JOSEPH E. KEELEY et al., Respondents, v. ADA C. WIGNALL, Appellant.

Daly B. Robnett for Appellant.

George E. Cryer and R. Alston Jones for Respondents.

SHINN, Acting P. J.—This is an appeal by Ada C. Wignall, surviving wife of Alonzo Charles Wignall, brother of deceased, Edith Alberta Wignall, from a decree of distribution.  Appellant's contention is that under the will of Edith she, Ada, was entitled to take the residuary estate which had

been left to decedent's brother Alonzo, for the reason, as claimed by her, that it was the expressed intention of testatrix that she should take the same as the surviving wife of Alonzo.

The will declared testatrix to be a single person, named an executor, directed him to pay her debts, and provided as follows:

"THIRD: I direct my Executor to pay out of the residue of the estate, the following bequests subject to the following conditions:

"The persons named herein are to receive the bequests set forth provided they survive distribution of the estate. This provision is applicable to each person named as though the same were repeated after each person's name. In the event they do not survive distribution, the bequests are to be paid to their surviving issue and if no issue survive, then to the surviving spouse. Subject to the said provision, I direct my Executor to pay the sum of Two Hundred Dollars ($200.00) to each of my cousins, whose names and addresses are as follows:

"Arthur H. Linaker, Los Angeles, California.

"Earl Wilkinson, Clinton, Iowa.

"FOURTH: The sum of One Hundred Dollars ($100.00) to Annie W. Dingee of San Diego, California.

"FIFTH: The sum of Five Hundred Dollars ($500.00) to Ada C. Wignall, wife of my brother, Alonzo Charles Wignall.

"SIXTH: I give, devise and bequeath the following personal property to the following persons:

"Books to Earl Wilkinson, Clinton, Iowa.

"Haviland China Tea set to Mrs. Willard Webber, 1530 Grand View Avenue, Glendale, California.

"Beleek tea set consisting of one tray, four cups and saucers, tea pot, sugar bowl and cream pitcher, to Josephine Shepherd, Hawthorne Farm, Libertyville, Illinois.

"Oil paintings and drawings done by my mother; also family portraits, to George H. Linaker, McGee, Arkansas.

"SEVENTH: After the above legacies have been paid and the personal property herein described, has been distributed, I direct that the remainder of my estate go to my brother Alonzo Charles Wignall.

"EIGHTH: I have, except as otherwise in this Will provided, intentionally omitted and with full knowledge, all persons who may claim to be entitled to share in my estate.

"NINTH: In the event that any provisions of this Will be adjudged unenforceable in law, I direct that, disregarding such provisions, the remainder hereof shall subsist and be carried into effect.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this twenty-second day of April A. D. 1939.

EDITH ALBERTA WIGNALL."

The question is: Was Alonzo one of "the persons named herein" whose issue or surviving spouses were to take the bequests if the named person (or persons) should not survive distribution. The trial court held that Alonzo was not included and, hence, that appellant does not take the residue as his widow. As a result of this construction decedent was held to have died intestate as to her residuary estate, which was of the approximate value of $50,000. The residuary estate was distributed to eleven cousins, an undivided one-thirteenth interest each, and to appellant as the assignee of two other cousins an undivided two-thirteenths interest. The seven persons named in the third, fourth, fifth and sixth paragraphs were living at the time of distribution and took their several bequests of money and other personal property.

Certain familiar rules for the interpretation of wills have application here. Of two interpretations, that is to be preferred which will prevent a total intestacy. (Prob. Code, § 102.) This rule operates to avoid partial as well as total intestacy. (*Estate of Olsen,* 9 Cal.App.2d 374 [50 P.2d 70]; *Estate of Northcutt,* 16 Cal.2d 683 [107 P.2d 607]; *Estate of Soulie,* 72 Cal.App.2d 332 [164 P.2d 565].) The very fact of making a will raises a presumption that the testatrix intended to dispose of all of her property. (26 Cal. Jur. 899.) It must therefore be assumed that testatrix intended to dispose of her entire estate. This, of course, she accomplished by the residuary clause and the rule above stated was thereby partially satisfied, but the reason for the rule should, we think, be taken into consideration in the interpretation of the contingent provisions. In making a complete disposition of her estate Miss Wignall had in mind the possibility that all the beneficiaries might not survive distribution. It was her plan to provide for that contingency, and she did so. The question is, then, such being her plan, whether she believed she had accomplished it as to the residue of the estate, or understood that she had not done so, and that upon the death of Alonzo, during her lifetime, the

residue would go to her heirs at law. We think it should be presumed that she intended and believed the contingent provisions to be complete. Reasons for this view will be developed later in our discussion of the will.

Respondent's argument in support of the decree is twofold: They point to the statement in paragraph third, "In the event they do not survive distribution, the bequests are to be paid to their surviving issue and if no issue survive, then to the surviving spouse. Subject to the said provision, I direct my Executor to pay the sum of Two Hundred Dollars ($200.00) to each of my cousins, whose names and addresses are as follows" etc., and they contend that it would be unreasonable to suppose that testatrix intended the issue or surviving spouse to take the interest of any beneficiary whose bequest was not in the form of money. They say: "And may we reasonably ascribe to the testate an intention to give to the surviving spouse of one of the legatees named in the Sixth paragraph of the will any one of the articles of personal property specifically bequeathed in that paragraph? These articles are of little intrinsic value. They are of a class customarily given to specific legatees for special or sentimental reasons. Is it not highly improbable that these articles were intended to go to the surviving issue or spouse of the legatee? Can we imagine that the testate intended to give her Haviland China tea set to the surviving husband of her friend Mrs. Willard Webber, or her Beleek tea set to the surviving husband of Josephine Shepard, if she has one, or the Linaker family portraits to the widow of the legatee— a stranger to the blood, to whom they would doubtless be of no interest?" But is it less reasonable to believe that she would have wished her Haviland China tea set to go to the surviving husband of Mrs. Willard Webber than to thirteen cousins, only three of whom were remembered with specific legacies? And the same as to the books, the Beleek tea set and the oil paintings "done by my mother" and the family portraits? If she wished her cousin Arthur H. Linaker to have the oil paintings and the family portraits, why should she not also have wished that they be kept in his family in the event he should predecease her, as well as in the event he did not and would have them to pass on to his family?

We pass now to the phraseology upon which respondents base the second phase of their argument. The basis of the

provision relating to the contingency that some beneficiary might not survive distribution is the clause, "the persons named herein are to receive the bequests set forth, provided they survive distribution of the estate." There is no limitation to cash bequests. Then, "This provision is applicable to each person named as though the same were repeated after each person's name." There is no limitation here. The language applies to all persons named in the will. ▮ Then follow the words "be paid" and "pay" in succeeding sentences. Respondents insist that these words are applicable only to the bequests of money, but we cannot agree. Although they usually refer to the satisfaction of a debt or obligation, they will be construed as importing a bequest or devise where it appears the testator so intended. In *Estate of Spreckels*, 162 Cal. 559 [123 P. 371], it was held that a direction to trustees to "pay over" certain amounts to beneficiaries amounted to a direct bequest to such beneficiaries, and the court said (p. 574) : "The word 'pay' is not properly applicable to the conveyance of real property and a direction to pay over such property in itself imports a direct devise to the party or parties who are, according to the testator's intent, to receive the property (*Estate of Dunphy*, (147 Cal. 101 [81 P. 315])." See, also, *Chase National Bank of the City of N. Y.* v. *Schleussner*, 117 Conn. 370 [167 A. 808] ; *Appeal of Clarke*, 70 Conn. 195 [39 A. 155] ; *Mason* v. *Jones* (N. Y.), 2 Barb. 229, 248] *Roosa* v. *Harrington*, 171 N.Y. 341 [64 N.E. 1] ; *Neblett* v. *Smith*, 142 Va. 840 [128 S.E. 247].) Here the words cannot be given their ordinary meaning. There were no debts or obligations due the beneficiaries. The words "to be paid" and "pay" mean no more than the words "are to receive" as used in the first sentence of the paragraph.

We should look to the circumstances under which the will was made. Testatrix was a spinster, approximately 73 years of age. Her nearest relative was her brother Alonzo, and after him came thirteen cousins, nine male and four female. She had a few personal friends whom she wished to remember, but she did not wish to leave anything to the female cousins, and remembered only three of the nine male cousins, namely, Arthur H. Linaker, to whom she left $200, Earl Wilkinson, who was given $200 and her books, and George H. Linaker, to whom she left her paintings. Her estate amounted to about $50,000, and the money bequests to only $1,000. Practically all of the estate was left to Alonzo. Next in the affections

of testatrix, as indicated by the will, was the wife of Alonzo, appellant herein, who was left a bequest of $500. As stated in the eighth paragraph, testatrix had in mind "all persons who may claim to be entitled to share in my estate," which would include the ten cousins to whom she left nothing, and in that paragraph she stated that she intentionally omitted making provision for them. Alonzo died February 13, 1941. Testatrix died December 29, 1944. The fact that no change was made in her will during the intervening time would strongly indicate that she was of the belief that the will as written disposed of her entire estate, in accordance with her general plan, even in the event that Alonzo should predecease her. She undoubtedly knew that practically her entire estate, which she was leaving to Alonzo, would probably go to appellant should she survive Alonzo. Are we to believe that in this period of almost four years after the death of Alonzo testatrix understood that the residue of the estate would not go to appellant, as Alonzo's widow, and was content to have it go to the thirteen cousins, three only of whom were considered by her to be deserving of remembrance? And could we come to this conclusion by giving to the words "be paid" and "to pay" a meaning which would render the plan of the will largely incomplete, when it is clear that they were used as words of bequest in the statement of that plan? Respondents say that if testatrix had intended that the residue of the estate should go to appellant as the widow of Alonzo, it would have been easy to so provide. True, and if she had intended the residue of the estate to go to the cousins whom she recalled with indifference, it would have been easy to so provide. ▆▆▆ It is beyond question that she had an intention to make provision for the surviving issue and spouses of the several beneficiaries, and the will negatives a purpose to make provisions for the ten unmarried cousins. The terms of the will and the circumstances which we have mentioned strongly indicate that Miss Wignall did attempt to provide for the surviving issue and spouses of *all* beneficiaries and believed she had made such provision. The existence of that belief would furnish a safe guide to the meaning of the contingent provisions of the third paragraph. What she believed the will said is, in the eyes of the law, what it says, if it is subject to a reasonable construction consistent with her belief. We do not doubt that the limitation of these contingent provisions to cash bequests, or to all bequests with the excep-

tion of the one to Alonzo, would defeat the wishes of testatrix and fail to give the effect to the language of paragraph third which she intended it to have, and which she believed it did have.

We conclude that appellant is entitled to take the residuary estate.

As already noted, two-thirteenths of the residuary estate was ordered distributed to appellant as assignee of two of the cousins under assignments previously obtained. She did not appeal from this portion of the decree and it is now urged by respondents that she has waived the right of appeal, *in toto,* by allowing these interests to be distributed to her. The rule that one may not accept the fruits of a judgment and yet appeal from it does not apply. Upon a reversal of the judgment appellant will be entitled to retain the interests which she acquired by assignment and also will receive the remainder of the residuary estate. She could not have appealed from the portions of the judgment that were favorable to her (Code Civ. Proc., § 938; *Estate of Hughes, ante,* p. 550 [182 P.2d 253], and is not estopped to prosecute her appeal. (*Estate of Clark,* 190 Cal. 354 [212 P. 622].)

The judgment is reversed with instructions to distribute the residuary estate to appellant.

Wood, J., and Kincaid, J. pro tem., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 18, 1947. Carter, J., and Schauer, J., voted for a hearing.