[Civ. No. 28241.   Second Dist., Div. Two.   June 23, 1965.]

Estate of HARRY ALEXANDER STEPHENSON, Deceased. ALYCE MAE SMITH, Claimant and Appellant, v. CLARICE E. DULIN MUSSER et al., Claimants and Respondents.

David N. Barry III for Claimant and Appellant.

Coit I. Hughes for Claimants and Respondents.

FLEMING, J.— Harry Stephenson died of a heart attack in 1961, leaving an estate of personal property, consisting mostly of securities, and a holographic document dated September 22, 1944, written on the flyleaf of a prayer book, reading:

> "22 Sept. 1944—R.B. No time left—This could be it — After 5 days (years) of action — If necessary please return my Good Book and all posessions to my Aunt Alyce Mae Smith, 434 No. Hill Street, Los Angeles—12, California
>
> Harry A. Stephenson
> 321-81-39243671"

The trial court found this document to be a will, but also found that the will only disposed of the book and possessions

which decedent had with him overseas in 1944 and that he had died intestate with respect to his remaining property—which included everything of substantial value in his estate. Alyce Smith, the sole beneficiary under the will, has appealed from this construction.

The trial court considered the document ambiguous, and therefore admitted extrinsic evidence in order to determine its intent and meaning. Stephenson had written the document while overseas with the armed forces at a time when he owned little property. Alyce Smith, although not related by blood to Stephenson, was the person closest to him in life. Prior to Stephenson's entry into the Army in World War II he had lived with the Smiths for several years, and during this time they had supported him. Alyce Smith was named on his soldier's identification tags and in his soldier's pay record as the person to be notified in case of emergency, and she was the beneficiary of his National Service Life Insurance, the proceeds of which she received on his death. Following the end of World War II Stephenson resided continuously with Alyce Smith until his death in 1961. The stock certificates which comprised the principal assets of his estate, he kept in Alyce Smith's safe deposit box. The prayer book containing the holographic document was found in a wooden box located in his room at the foot of his bed.

This case presents three questions: Was the document a will? Was it intended to continue in effect after the war? Of what property did it dispose?

1. We agree with the trial court that the document was a will. Liberal construction of holographic documents is the rule, particularly with respect to those made by persons in the armed forces in the face of imminent peril of death. (Prob. Code, §§ 53, 54.) As summarized by Mr. Witkin, 4 Summary of California Law (1960) section 94, pages 3083-3084: "Prob.C. 53 states that the holographic will is 'subject to no other form'; hence no particular words are necessary. A letter or other informal document will be sufficient if it discloses the necessary testamentary intent, i. e. if it appears that the decedent intended to direct the final disposition of his property after his death. The surrounding circumstances may be considered in reaching a conclusion on this issue." In the light of this rule the prayer book flyleaf qualified as a will.

2. We also agree with the trial court that the will was intended to continue in effect after the war, and was

not a temporary document conditioned to take effect only on the testator's death in battle. Directly in point is *Estate of Taylor,* 119 Cal.App.2d 574 [259 P.2d 1014], often referred to as the Davy Jones case. In that case, Taylor, in the Navy, wrote (p. 577) " '... in case Davie Jones gets me out in the South Pacific ocean in other words lost at Sea ...' ", his property was to go to Betty Black. Taylor survived his tour of duty and lived for eight years after writing his letter. In holding Taylor's letter to have been an absolute will, the court said (pp. 580-581): "The test for determining whether a will is conditional is generally stated in this fashion: Did the testator intend, by the language used, to make the happening of the possibility referred to a condition precedent to the operation of the will, in which case the instrument is not entitled to probate if the condition is not fulfilled; or did he state the possibility of the happening merely as the motive or reason which led to the making of the instrument and which was carelessly stated in language suggestive of a condition, in which case the will becomes operative on the testator's death even if the event, the possibility of which appears to have induced the will, has not taken place?" Stressing the preferred policy in favor of upholding informal wills executed by members of the armed forces, the court interpreted Taylor's language as an expression of the motive which led him to make a will and not as a condition of its validity. See also *Estate of Del Val,* 159 Cal.App.2d 600 [323 P.2d 1011].

In our view the wording in the present will created an absolute, and not a conditional, testament.

3. Did the will dispose of all the testator's estate, or only that portion he had with him overseas in 1944? Our starting point on this question is the presumption against intestacy, complete or partial, set forth in Probate Code, section 102. The very fact of making a will suggests that the testator intended to dispose of all his property, and the idea that he intended to die testate as to one portion and intestate as to another is so unusual that any reasonable construction which can avoid it will be favored. (*Estate of Olsen,* 9 Cal. App.2d 374, 379-380 [50 P.2d 70]; *Estate of Northcutt,* 16 Cal.2d 683, 690 [107 P.2d 607]; *Estate of Wignall,* 80 Cal. App.2d 958 [183 P.2d 26]; *Estate of O'Brien,* 74 Cal.App.2d 405 [168 P.2d 432].) Also pertinent is the general principle that a will is normally construed to speak in the light of affairs as they exist at the time of the testator's death

and not as they had been at the time the will was made. (*Estate of Babb*, 200 Cal. 252, 255-256 [252 P. 1039].)

In this case evidence of Stephenson's conduct was available to resolve the question of what property he intended to dispose by his will. (*Estate of Sargavak*, 41 Cal.2d 314, 319 [259 P.2d 897]; *Estate of Harrington*, 154 Cal.App.2d 470 [316 P.2d 432].) This evidence lends no support to the existence of any plan of the testator to continue his holographic will in operation in 1961 solely to dispose of objects of sentimental value he had had in his possession overseas in 1944. To the contrary it supports the view that decedent intended Alyce Smith to be the beneficiary of his entire estate. His continuous residence with her from the termination of World War II until his death, his retention of her as the beneficiary of his National Service Life Insurance, the preservation of his holographic will in his bedroom, the absence of any other will or codicil, and, most important of all, his entrusting the custody of the principal assets of his estate, the stock certificates, to her safe deposit box, provide solid support for the conclusion that the will was intended to cover his entire estate and was not limited to assets he had with him overseas in 1944.

Since extrinsic evidence provides satisfactory proof of decedent's intention to dispose of his entire estate by means of his holographic will, that intention is controlling and must be given effect. (Prob. Code, § 101; *Estate of Akeley*, 35 Cal.2d 26 [215 P.2d 921, 17 A.L.R.2d 647]; *Estate of Karkeet*, 56 Cal.2d 277 [14 Cal.Rptr. 664, 363 P.2d 896].)

We hold that Stephenson bequeathed his entire estate to his sole beneficiary, Alyce Smith.

Judgment reversed.

Roth, P. J., and Herndon, J., concurred.