128 Cal.App.3d 867 (1982)
198 Cal. Rptr. 170
Estate of ELISE T. CASEY, Deceased.
PATRICIA S. BATCHELOR et al., Petitioners and Respondents,
v.
MONICA B. TALBOT, Objector and Appellant.
Docket No. 61329.
Court of Appeals of California, Second District, Division Two.
February 17, 1982.
*869 COUNSEL
Marshall, Lowthorp, Richards & Hibbs, Lascher & Lascher, Lascher & Wilner, Wendy Cole Lascher and Christina J. Imre for Objector and Appellant.
*870 Latham & Watkins, A.R. Kimbrough, Stephen L. Jones, Minor, Popeney & Lebetsamer and Robert M. Popeney for Petitioners and Respondents.
OPINION
COMPTON, J.
This appeal presents the combined issues of the role of the judge and the use of extrinsic evidence in determining the applicability of Probate Code section 92  the antilapse statute in a proceedings to determine heirship.[1] The court below rejected any resort to extrinsic evidence and determined from the language of the will in question that Probate Code section 92 was applicable. We affirm.
The decedent, Elise Casey, had two daughters, Martha and Patricia. Martha in turn had four children and Patricia had six children, giving Elise a total of ten grandchildren. Patricia died in 1971, and Martha died in 1975. Elise survived both of her daughters and died in 1976.
The holographic will which is the source of the dispute was executed by Elise in August of 1973, some two years after the death of Patricia. Codicils were executed September of 1973 and February of 1975, but the contents of neither is relevant here. The will was admitted to probate in April of 1977, some 18 months after the death of Martha. No contest was filed and the validity of the will has been conclusively determined. (Prob. Code, §§ 380, 384; Estate of Caruch (1956) 139 Cal. App.2d 178 [293 P.2d 514]; Estate of Blalock (1949) 95 Cal. App.2d 463 [213 P.2d 100].)
One provision of the will consisted of a specific bequest to Martha of a residence and some listed shares of common stock. Martha's children petitioned for a decree to determine their interest in the estate relying on Probate Code section 92, to establish that the bequest to their deceased mother should now go to them.
*871 Monica Talbot, one of Patricia's children, and representing the other group of grandchildren, countered by filing her own statement of interest and pursuant to Probate Code section 1081 requested a jury trial on what she characterizes as the factual issue of Elise' intent as to the application of Probate Code section 92. In the event of a trial on that issue, Monica proposed, by way of an offer of proof, to present extrinsic evidence bearing on that intent. She contends that the trial court erred in rejecting the extrinsic evidence and denying her a jury trial.
(1) At the outset, we dispose of Monica's claim that Elise' intent should be determined by a jury. The interpretation of a will is a matter of law to be determined by the court. (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839].) Since the entire purpose of interpreting the will is to give effect to the testator's expressed desire, an interpretation of the document necessarily involves the process of determining the testator's intent.
While extrinsic evidence offered to assist in the interpretation of a will may itself create an issue as to what the extrinsic facts are, an issue that may be tried to a jury, once that factual dispute is resolved, the interpretation of the testator's intent to be drawn from the established facts, is a matter of law for the court. (Parsons v. Bristol Development Co., supra, 62 Cal.2d 861.)
(2) Further, whether or not resort is had to extrinsic evidence, the court must determine the intent of the testator from the language used. The court in interpreting the will may not decide what the testator should have done or even that the testator desired to accomplish a particular objective. The court determines only what the testator did do by the manner in which he expressed himself. (Estate of Maloney (1938) 27 Cal. App.2d 332 [80 P.2d 998]; Estate of Flint (1972) 25 Cal. App.3d 945 [102 Cal. Rptr. 345].) In short, the court, under the guise of interpretation, may not write a new will for the testator. (Estate of Norris (1947) 78 Cal. App.2d 152 [177 P.2d 299]; Estate of Brunet (1949) 34 Cal.2d 105 [207 P.2d 567, 11 A.L.R.2d 1382].)
Here the will, in addition to the bequest to Martha, contained two specific bequests to individual grandchildren, one a child of Patricia, and the other a child of Martha. There was no ambiguity in the language *872 of these bequests. The will also contained a provision which could be characterized as a residual clause. It read as follows: "The remaining stocks to be sold and divided equally among the ten grandchildren. After Estate & legal expenses and last illness expenses, any cash remaining in the savings account #XXXXX-XX in the Crocker Citizens Bank shall be given to Martha C. Shoemaker. The shares of stock not otherwise mentioned shall be sold & the cash from them and that remaining in any & all other bank deposits shall be divided equally among the 10  grandchildren."
(3a) Monica contends that through the use of extrinsic evidence she could demonstrate that the will is ambiguous on the issue of whether Elise intended that Martha's four children should inherit the proceeds from the sale of the house and stock to the exclusion of the other six grandchildren, a result which flows from the application of Probate Code section 92. Further, she contends that having exposed the ambiguity, extrinsic evidence would disclose an intent that the 10 grandchildren would share equally in the property bequeathed to Martha.
According to Monica extrinsic evidence in essence would allegedly show that during her lifetime, Elise was scrupulous in maintaining absolute equality in the making of gifts to her two daughters and as among the grandchildren as a group equality was also the watchword. In summary, Monica contends that the extrinsic evidence would show that Elise intended the gift to Martha to lapse and be swept into the residual provisions of the will.
(4) Extrinsic evidence is admissible in the first instance to establish ambiguity in a will, i.e., to show that the testator's language does not disclose a clear intent but is susceptible of two or more reasonable interpretations. On the other hand, even though ambiguous or imperfect, the testator's language can only be interpreted in accordance with a meaning to which it is reasonably susceptible. (Estate of Russell (1968) 69 Cal.2d 200 [70 Cal. Rptr. 561, 444 P.2d 353]; Estate of Donnellan (1912) 164 Cal. 14 [127 P. 166].)
(5) In the absence of an antilapse statute, a lapsed gift will go to the residual beneficiary, if there is a residual clause. If there is no residual clause, the lapsed gift is subject to intestate distribution unless the testator makes a substitute disposition. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 224, p. 5735.)
*873 Here if there is any ambiguity in the will it is whether Elise constructed a residual clause which would have saved the lapsed gift to Martha from intestate distribution, absent an antilapse statute. The rule, however, which compels an interpretation which, if possible, will avoid intestacy (Prob. Code, § 102) would militate in favor of an interpretation that the residual beneficiaries receive the lapsed gift (Estate of Olsen (1935) 9 Cal. App.2d 374 [50 P.2d 70]; Estate of Wignall (1947) 80 Cal. App.2d 958 [183 P.2d 26]),[2] and we will assume that to be the case.
(6) The fact is, however, that California has an antilapse statute. While its application is not inexorable (Estate of Carroll (1956) 138 Cal. App.2d 363 [291 P.2d 976]) and a clear expression of intent to avoid its operation will be given effect (Estate of Salisbury (1978) 76 Cal. App.3d 635 [143 Cal. Rptr. 81]), the simple existence of a residual clause adequate to avoid intestacy is not sufficient to avoid the operation of the statute. To hold otherwise would be to totally nullify the effect of the statute.
(3b) The will here does not make any reference to lapsed gifts nor the eventuality of Martha's predeceasing Elise. No substitute gift or beneficiary is provided. There is simply no language in the will which is susceptible of a reasonable interpretation that Elise intended to avoid the operation of Probate Code section 92.
Assuming arguendo that the extrinsic evidence would have established that Elise constantly and fervently adhered to a pattern of absolute equality among her grandchildren in the area of gift giving, the most that it would establish is that if she had contemplated that Martha would predecease her she would have made different provisions. The controlling fact is that she did not.
In that connection we note that in addition to the aforementioned extrinsic evidence, Monica made a rather vague offer to prove that some undescribed document of a testamentary nature was either purposely or intentionally destroyed or discarded by Patricia Batchelor, one of Martha's daughters.
*874 While eschewing any intent to prove a lost will or to contest the will admitted to probate, Monica asserts that the act of destruction, if proved, would invoke the operation of Evidence Code section 413, which provides that adverse inferences may be drawn against a party who willfully suppressed evidence.
This rather circular argument founders on the question of what adverse inference is to be drawn which could assist Monica. According to Monica, the answer to that question is an inference that Elise intended to avoid the operation of Probate Code section 92  an impossible leap since there is no language in the admittedly valid and uncontestable will, which is reasonably susceptible of that interpretation. An inference that the missing document was a codicil which contained such language would be an attack on the will admitted to probate.
Extrinsic evidence of any type cannot be used to reach an interpretation which substitutes affirmative dispository language for silence. That would amount to rewriting the will.
The antilapse statute is in some respects analogous to the laws of intestate distribution. The Legislature in establishing a pattern for intestate distribution created a hierarchy of beneficiaries which presumptively comports with what the average and ordinary individual would desire in disposing of his estate. This scheme operates when the decedent has been silent on the subject by failing to execute a will with the requisite formality.
Similarly, the antilapse statute expresses the Legislature's notion of what the average individual would desire in the case of a lapsed gift. When the testator is silent on the subject of a lapsed gift by failing to contemplate and provide for that eventuality, the statute operates.
Since the statute provides a pattern of distribution in the case of a lapsed gift which is to be preferred over use of a residual clause or intestacy, some formality, in the nature of a clearly expressed intent, is necessary to avoid its operation. (Estate of Steidl (1948) 89 Cal. App.2d 488 [201 P.2d 58]; Estate of Friedman (1961) 198 Cal. App.2d 434 [18 Cal. Rptr. 252]; Estate of Roberts (1970) 9 Cal. App.3d 747 [88 Cal. Rptr. 396].) No such provision is present here nor did Monica's offer of proof contain any legal basis upon which such provision could be founded.
*875 The order is affirmed.
Roth, P.J., and Beach, J., concurred.
A petition for a rehearing was denied March 12, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 14, 1982.
NOTES
[1] Probate Code section 92 provides: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, having lineal descendants, or is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator."
[2] Under the circumstances here the result would probably have been the same.